# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **KIRONDEEP BHANDARI** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 07-2232 ESH |
| | ) | |
| **CENTER FOR NONPROFIT** | ) | |
| **ADVANCEMENT**, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS COMPLAINT

Defendants Center for Nonprofit Advancement and Betsy Johnson, by their attorneys, move to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state any claim upon which relief can be granted.

The grounds for this motion are more fully stated in the memorandum of points and authorities accompanying this motion.

Respectfully submitted,

OPPENHEIMER, FLEISCHER & QUIGGLE, P.C.

By____/s/ Charles H. Fleischer_____
       Charles H. Fleischer, D.C. Bar. No. 4341

7700 Old Georgetown Road, Suite 800
Bethesda, MD  20814
tel: (301) 986-4056 / fax: (301) 951-0555
e-mail: cfleischer@ofqlaw.com

*Attorneys for defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KIRONDEEP BHANDARI** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 07-2232 ESH |
| | ) | |
| **CENTER FOR NONPROFIT** | ) | |
| **ADVANCEMENT**, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT

Defendants Center for Nonprofit Advancement (Center) and Betsy Johnson (Johnson), by their attorneys, submit this memorandum of points and authorities in support of their motion to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state any claim upon which relief can be granted.

### I. Statement of the Case

According to the Complaint, plaintiff Kirondeep Bhandari (Bhandari) was hired in October 2006 as the Center's Director of Human Resources and Administration. (Cmplt. ¶ 4) [1]  Bhandari alleges that at relevant times he was a "participant" in an employee benefit plan, as that term is used in the Employee Retirement Income Security Act, 29 U.S.C. §

---

[1] Solely for purposes of defendants' motion, the allegations in the Complaint are taken as true. The defendants are prepared, as necessary, to dispute the Complaint's substantive allegations.

1001, *et seq.* (ERISA). (Cmplt. ¶ 17) However, nowhere in the Complaint does Bhandari specifically allege "participant" status as of the time he filed this suit, nor does he identify the specific plan in which he allegedly participated.

The Center is a nonprofit corporation headquartered in the District of Columbia, serving the nonprofit community through education, advocacy, nonprofit community building, and group purchasing. (Cmplt. ¶ 5) Johnson is the Center's long-time Executive Director, to whom Bhandari reported. (Cmplt. ¶ 6)

The Center is the administrator of a separate legal entity known as the Center Health Benefits Trust ("Trust"), which provides group insurance products to employees of the Center's various member organizations. The Center charges the Trust for time spent by Center employees on Trust matters. (Cmplt. ¶ 7)

According to the Complaint, during Bhandari's tenure Johnson falsified her time sheets so as to overcharge the Trust. She also instructed other employees to do the same. (Cmplt. ¶¶ 8, 9 & 11) Bhandari complained about this practice by sending a single e-mail to Derek Harps, the Center's Deputy President and President-Elect, on September 19, 2007. (Cmplt. ¶ 12) Johnson then retaliated against Bhandari by abolishing his position and terminating his employment on September 24, 2007. (Cmplt. ¶¶ 13, 14)

Bhandari's subsequent suit against the Center and Johnson is stated in four counts: *Count 1*, against both the Center and Johnson, alleges that Bhandari's termination was in retaliation for his reporting suspected ERISA violations; *Count 2*, against both the Center and Johnson, alleges that Bhandari's termination was wrongful and in violation of public policy;

*Count 3*, against Johnson alone, alleges that Johnson breached fiduciary duties she owed the Trust pursuant to ERISA; and *Count 4*, against Johnson alone, alleges that Johnson tortiously interfered with Bhandari's employment.

The Court's subject matter jurisdiction over the two common law claims – Count 2 for wrongful discharge, and Count 4 for tortious interference – is alleged to be supplemental to the ERISA-based claims.  (Cmplt. ¶ 1)

## II.  Argument

Fed.R.Civ.P 12(b)(6) permits a party to raise by motion the defense of failure to state a claim upon which relief can be granted.  Traditionally, the courts considered the legal sufficiency of a complaint under the no-set-of-facts test of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  More recently, the Supreme Court held a complaint deficient for lack of plausibility.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007) (in antitrust conspiracy action based on parallel conduct by competing companies, plaintiffs "have not nudged their claims across the line from conceivable to plausible").  The Complaint in this case fails under either formulation.

Should the Court dismiss Bhandari's federal claims but conclude that his state law claims of wrongful discharge and tortious interference survive a Rule 12(b)(6) motion, the Court should nevertheless dismiss the state law claims for lack of supplemental subject matter jurisdiction.  28 U.S.C. § 1367(c) (a district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it has original jurisdiction).

## A.  Count 1 (Retaliation)

ERISA's retaliation provision states in part:

It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify *in any inquiry or proceeding* relating to this chapter.

29 U.S.C. § 1140 (emphasis added).

There appears to be no decision in this Circuit on the question whether a single internal complaint, such as Bhandari alleges, is protected under § 1140.  However, the Fourth Circuit in *King v. Marriott Int'l, Inc.*, 337 F.3d 421 (4th Cir. 2003) (*King I*), rejected an ERISA retaliation claim on allegations substantially more compelling than those offered here.

In *King I*, the employee expressed concerns to fellow employees and to a Marriott Senior Vice President about a proposal to transfer funds from a Marriott medical plan to a general corporate account.  The proposal apparently was not implemented then, but was revived the following year.  Again, the employee raised objection with the Senior Vice President, as well as with two in-house attorneys, going so far as to request an opinion letter from one of them.  The year after that a similar transfer was proposed and again the employee objected, both orally and in writing, to the Senior Vice President.

The Fourth Circuit held that mere intra-company complaints, without more, cannot support an ERISA retaliation claim.  The court reasoned that the phrase "testified or is about to testify" suggests that the "inquiry or proceeding" referenced in § 1140 "is limited to the

-4-

legal or administrative, *or at least to something more formal than written or oral complaints made to a supervisor*") (emphasis added).  *Id*. at 427.  In so holding, the court observed that "the anti-retaliation provision in Section 510 [29 U.S.C. § 1140] is much narrower than the equivalent anti-retaliation provisions in such statutes as Title VII of the Civil Rights Act of 1964."  *Id*.  The court also relied on its prior interpretation of similar language in the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*  *Id*.

The Fourth Circuit in *King I* disposed of two earlier Circuit Court decisions – *Anderson v. Electronic Data Systems Corp*., 11 F.3d 1311 (5th Cir. 1994), and *Hashimoto v. Bank of Hawaii*, 999 F.2d 408 (9th Cir. 1993) – as unpersuasive.  Writing for a unanimous panel, Judge Luttig distinguished *Anderson* by its failure to address the facial inapplicability of § 1140 to intra-office complaints.  And he dismissed *Hashimoto* as representing the Ninth Circuit's "policy preference" to broaden and extend the language of § 1140 beyond its plain meaning.  *King*, 337 F.3d at 428. [2]

*Nicolaou v. Horizon Media, Inc*., 402 F.3d 325 (2nd Cir. 2005), decided after *King I*, is also readily distinguished.  In that case, the complaining employee first contacted the company's Chief Financial Officer about underfunding of the company's pension plan, she then contacted the company's Comptroller, and finally, she contacted an attorney for the company.  The attorney expressed "enormous concern" over the matter and the complaining

---

[2] *King I's* subsequent history, after remand by the Fourth Circuit and further remand back to state court, is reported at 866 A.2d 895 (Md. App. 2005) (*King II*).  In *King II* the Maryland Court of Special Appeals adopted the Fourth Circuit's view that ERISA "does not provide protection for intra-employment conduct."  *King II*, 866 A.2d at 905.

employee "promised to remain available to assist or provide additional information in connection with the investigation." *Id.* at 326. Next, the complaining employee and the attorney met with the company's President and urged him to rectify the problem. *Id.* While the Second Circuit held that these steps were sufficient to trigger § 1140 protection, it also acknowledged that its decision was consistent with *King I*: "[W]e do not believe that our holding is in conflict with the Fourth Circuit's recent decision in *King* . . ., which read Section 510's [§ 1140] use of the phrase 'inquiry or proceeding' as reaching 'only the legal or administrative, or at least . . . something more formal than written or oral complaints made to a supervisor.'" *Nicolaou*, 402 F.3d at 330 (second ellipsis in original).

In this case, Bhandari did not give information, testify, or plan to testify in any inquiry or proceeding. His single e-mail falls far short of the efforts by the plaintiff in *Nicolaou*, and even the *King* plaintiff, to address perceived ERISA violations, which in each case included involvement of corporate counsel. Bhandari thus cannot claim protection under § 1140 and his ERISA retaliation claim must fail as a matter of law.

## B. Count 2 (Wrongful Discharge)

Bhandari's claim of wrongful discharge fails as a matter of law both because the claim is preempted by ERISA and because Bhandari has not pleaded the existence of a state public policy sufficient to invoke the wrongful discharge exception to the District of Columbia's employment-at-will doctrine.

### 1. The Wrongful Discharge Claim Is Preempted by ERISA

ERISA's preemption provision states, in relevant part:

[T]he provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter related to any employee benefit plan.

* * *

The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State.  A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States.

29 U.S.C. § 1144.

In *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990), an employee sued for compensatory and punitive damages under Texas state law, claiming he had been discharged by his employer primarily so the employer could prevent the employee's pension benefits from vesting some four months later.  Pointing out ERISA's "broadly worded pre-emption provision," *id.* at 138, the Supreme Court held that "the cause of action which the Texas Supreme Court recognized here – a claim that the employer wrongfully terminated plaintiff primarily because of the employer's desire to avoid contributing to, or paying benefits under, the employee's pension fund – 'relate[s] to' an ERISA-covered plan within the meaning of § 514(a), and is therefore pre-empted."  *Id.* at 140; emphasis in original.

The holding in *Ingersoll-Rand* applies here.

## 2. No State Public Policy Is Involved

Aside from preemption, ERISA does not provide a public policy basis on which to ground a state wrongful discharge action in the District of Columbia, since ERISA expresses *federal*, not *state* public policy.

-7-

As a public policy exception to the state common law doctrine of employment at will, wrongful discharge is itself a state (or in this case, District of Columbia) common law claim. *Adams v. George W. Cochran & Co., Inc.*, 597 A.2d 28, 33 (D.C. 1991). The Court therefore looks to District of Columbia precedent in determining whether the exception should be applied under any particular set of facts. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Novak v. Capital Mgmt. & Devel. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006) ("Our duty, then, is to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered this case").

In marking the boundaries of the District's public policy exception, the D.C. Court of Appeals has invariably looked not to federal, but to the District's own public policy. *E.g.*, *Adams* (municipal regulation prohibiting the operation of a vehicle without a valid inspection sticker); *Carl v. Children's Hosp.*, 702 A.2d 159, 164-65 (D.C. 1997) (concurring opinion of Terry, J.) (D.C. Code provisions reflecting the rights of employees to speak out publicly on issues affecting the public); *Washington v. Guest Services, Inc.*, 718 A.2d 1071, 1072 (D.C. 1998) (District's health and food regulations); and *Fingerhut v. Children's Nat. Medical Center*, 738 A.2d 799, 802 (D.C. 1999) (D.C. laws prohibiting bribery and prescribing the conduct of special police officers). *See Johnson v. TCOM Systems, Inc.*, 1989 WL 517870 *6 (D.D.C. 1989) (an ERISA case involving a wrongful discharge claim, decided before the District of Columbia Court of Appeals first adopted the public policy exception in *Adams*, where this Court said, "[T]here is no obvious reason to apply federal public policy to a state law claim").

-8-

Maryland, like the District, recognizes a public policy exception to the employment-at-will doctrine. *Adler v. American Standard Corp.*, 432 A.2d 464 (Md. 1981). And, like the District, Maryland looks to *its own* public policy when the exception is invoked. *King II*, 866 A.2d at 903 (Md. App. 2005) ("[T]here must be a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing, prohibiting, or protecting the conduct in question so as to make the *Maryland public policy* on the topic not a matter of conjecture or even interpretation") (emphasis added).

In *King II*, the Maryland Court of Special Appeals specifically rejected ERISA as a source of state public policy, stating that ERISA does not "provide[] a sufficiently compelling public policy mandate to support a wrongful discharge action." *King II*, 866 A.2d at 903-04.

The D.C. Court of Appeals has also made clear that a wrongful discharge claim cannot be based on a statute that creates rights and remedies not otherwise available at common law. *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 578 (D.C. 2007). In *Griffin* the employee sued her employer on a common law claim of negligent supervision based on alleged sexual harassment by her supervisor. Reasoning that the specific public policy there involved – prohibiting sexual harassment – is entirely a creature of the District of Columbia Human Rights Act (now codified at D.C. Code § 2-1401.01, *et seq.*), the court held that "respect for the legislature and its enactments requires that the rights of a victim of non-physical sexual

harassment be limited by the remedies which the legislature has provided in the [Human Rights Act]." *Id*. at 577 (citation omitted; text alteration in original).

Since ERISA both creates the right on which Bhandari necessarily sues, and it provides a comprehensive civil enforcement scheme at 29 U.S.C. § 1132, Bhandari cannot predicate a common law wrongful discharge claim on that statute.

## C.  Count 3 (Breach of Fiduciary Duty)

For Bhandari to pursue a breach of fiduciary duty claim against Johnson, he must have standing as an ERISA "participant" and Johnson must be an ERISA "fiduciary."  Neither is the case here. [3]

### 1.  Bhandari Lacks Standing

ERISA's civil enforcement provision, under which Bhandari brings this suit, states in pertinent part:

> A civil action may be brought . . . by a *participant* or beneficiary . . .  to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; [or] by a *participant*, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

---

[3] ERISA also allows a "beneficiary," defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder," to sue for breach of fiduciary duty.  29 U.S.C. § 1002(8).  Bhandari does not claim beneficiary status here.  During his tenure as a participant he would have had no reason to designate himself, as he might a spouse or dependent, to receive benefits.

29 U.S.C. § 1132(a) (emphasis added). The statute in turn defines "participant" in relevant part as "any employee or former employee of an employer . . .who is or may become eligible to receive a benefit of any type." 29 U.S.C. § 1002(7). *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) ("In our view, the term 'participant' is naturally read to mean either employees in, or reasonably expected to be in, currently covered employment, or former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits") (citations, quotation marks and text alteration indicators omitted);

In *Alexander v. Anheuser-Busch Companies, Inc.*, 990 F.2d 536 (10th Cir. 1993), a former employee brought suit against the administrator of an employer-sponsored long-term disability insurance plan, and against the plan itself. The suit included claims for breach of the covenant of good faith and fair dealing in an insurance contract, benefits under the plan, and breach of fiduciary duty based on the employer's misrepresentations and failure to provide plan information. The Tenth Circuit dismissed the suit for lack of jurisdiction on the ground that the former employee was not a participant and he therefore lacked standing. The court said that, to be a participant,

> a plaintiff must either be (1) an employee in, or reasonably expected to be in, currently covered employment; (2) a former employee with a reasonable expectation of returning to covered employment; (3) a former employee with a colorable claim that he will prevail in a suit for benefits; or (4) a former employee with a colorable claim that eligibility requirements will be fulfilled in the future.

-11-

*Id.* at 538-39 (citing *Firestone*, 489 U.S. at 117-18). In *Alexander* the plaintiff no longer worked for the defendant employer and he had no reasonable prospect of returning to his former employment, having been rejected twice for re-employment and not asking for reinstatement in his complaint. Moreover, the plaintiff did not have a colorable claim for benefits, since the condition for which he sought long-term disability was clearly pre-existing and therefore not covered.

The Tenth Circuit is in accord with the Fourth Circuit on the ERISA standing issue. *Felix* v. *Lucent Technologies, Inc*., 387 F.3d 1146, 1158-59 (10th Cir. 2004). However, in *Felix* the court noted a Circuit split on what it called the "but for" exception – that but for a defendant's wrongful action, a plaintiff would have been entitled to the additional benefits under the plan. *Id.*

Bhandari claims here that he was "at relevant times . . . a participant . . . as defined by ERISA." (Cmplt. ¶ 17) Yet the only time relevant here is the date suit was filed, and by that time he was a *former* employee, no longer participating in the Trust's insurance plans. *See* Cmplt. ¶ 7 (the Center offers its member *employees* the opportunity to enroll in insurance programs sponsored by the Trust). Moreover, nowhere in Count 3 or elsewhere in his Complaint does Bhandari allege entitlement to benefits, vested or otherwise. To the contrary, his Count 3 *ad damnum* is limited to an "[unspecified] judgment against Defendant Johnson and [an] award of appropriate legal and equitable relief, including . . . reimbursement to the plan losses . . . and an injunction . . .." While the Trust itself might have standing to pursue these remedies, Bhandari does not.

-12-

## 2. Johnson Is Not a "Fiduciary"

ERISA imposes liability on "any person who is a fiduciary . . . who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . .." 29 U.S.C. § 1109. In its definitional section, ERISA provides that

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

But for Bhandari's conclusory assertion that Johnson had, but breached, fiduciary responsibilities to participants and beneficiaries (Cmplt. ¶¶ 27, 28), nothing in the Complaint supports the claim that Johnson was a fiduciary. To the contrary, the Complaint shows only that the Center, of which Johnson is an employee, was a *vendor* to the Trust, providing Johnson's and other employees' labor and billing for time spent on Trust matters. Such third parties are not fiduciaries if they simply perform ministerial functions. *See CSA 401(K) Plan v. Pension Professionals, Inc*., 195 F. 3d 1135 (9th Cir. 1999). *See also* U.S. Department of Labor regulations, 29 C.F.R. §§ 2509.75-5 and 2509.75-8 (persons who have no power to make decisions as to plan policy interpretations, practices or procedures but who perform specific administrative functions within a framework of policies, interpretations, rules, practices and procedures made by others are not deemed fiduciaries of the plan).

-13-

Bhandari also alleges that Johnson was a plan "administrator" (Cmplt. ¶¶ 6, 27), which is defined by statute as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C.§ 1002(16)(A)(i). He does not, however, attach or even make reference to any Trust instrument. Morever, he contradicts himself by alleging in paragraph 7 that the Trust "is administered by" the Center.

## D. Count 4 (Tortious Interference)

District of Columbia law makes clear that a *party* to a contract cannot tortiously interfere with that contract. *Press v. Howard Univ.*, 540 A.2d 733 (D.C. 1988). In that case, plaintiff Press was suspended from his positions as professor and chair of the radiology department at Howard University School of Medicine, and as clinical physician at Howard University Hospital. Although later reinstated, he sued the University for breach of contract and he sued a number of University officers who apparently were involved in the suspension. The trial court dismissed all claims and the Court of Appeals affirmed. With respect to dismissal of claims against the University officers, the appellate court said:

> [T]he individual defendants, all of whom were officers of the University, were acting as agents of the other party to the contract, and . . . the University through their actions could not tortiously interfere with its own contract. *Appellant's assertion of this claim as a separate cause of action borders on the frivolous.*

*Press*, 540 A.2d at 736 (citations omitted; emphasis added).

In *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285 (D.C. 1989), the court revisited its earlier *Press* holding, pointing out that the individual defendants in *Press* were "officers acting within the scope of their official duties, they served as the alter

-14-

ego of the university and had the power to bind the university." *Id*. at 290.  Although the court recognized a distinction between an "employee's true employers – those who have power to hire and fire – and mere supervisors who lacks such authority, the court read *Press* as covering supervisors as well as officers so long as the supervisors act without malice. *Id*. at 290-91. [4]

This case comes squarely within the holding of *Press*.  Johnson is the Center's Executive Director, and she obviously had the authority to fire Bhandari, having abolished his position and terminated his employment. (Cmplt. ¶¶ 13, 14, 32, 33)  She is therefore the Center's alter ego and she cannot tortiously interfere with the employment relationship between the Center and Bhandari.

### III.  Conclusion

For all the foregoing reasons, the Court should dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state any claim upon which relief can be granted.

---

[4] It is not entirely clear from *Sorrells* whether the existence of malice strips only a supervisor of protection from tortious interference claims, or whether it strips officers as well. *See Langer v. George Washington Univ*., 498 F.Supp.2d 196, 202 (D.D.C. 2007), which appears to read *Press* and *Sorrells* as treating malice as relevant only to a supervisor's conduct.  In any event, the Complaint in this case does not allege that Johnson acted with malice, but rather "to protect her own employment and position with the Center."  (Cmplt. ¶ 33)  The allegation in paragraph 32 that Johnson acted "intentionally" is offered simply to satisfy one of the required elements of tortious interference. *Sorrell*, 565 A.2d 289.  Intentional conduct, without more, does not amount to malice.

Respectfully submitted,

OPPENHEIMER, FLEISCHER & QUIGGLE, P.C.


By___/s/ Charles H. Fleischer_____
       Charles H. Fleischer, D.C. Bar. No. 4341

7700 Old Georgetown Road, Suite 800
Bethesda, MD  20814
tel: (301) 986-4056 / fax: (301) 951-0555
e-mail: cfleischer@ofqlaw.com

*Attorneys for defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KIRONDEEP BHANDARI** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 07-2232 ESH |
| | ) | |
| **CENTER FOR NONPROFIT** | ) | |
| **ADVANCEMENT**, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## ORDER DISMISSING COMPLAINT

Upon consideration of the motion of defendants to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state any claim upon which relief can be granted, plaintiff's opposition thereto, and defendants' reply, and it appearing to the Court that the Complaint fails to state any claim upon which relief can be granted, it is, therefore, by the Court, this _____ day of _____, 2008,

ORDERED, that the motion is GRANTED; and it is further

ORDERED, that the Complaint is dismissed for failure to state any claim upon which relief can be granted.

_____
UNITED STATES DISTRICT JUDGE