JIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

KIRONDEEP BHANDARI                        )
                                          )
                                          )
          Plaintiff,                      )        Case No.07-2232ESH
     v.                                   )
                                          )        JURY DEMANDED
CENTER FOR NONPROFIT ADVANCEMENT          )
                                          )
          and                             )
                                          )
BETSY JOHNSON, an individual              )
                                          )
                                          )
          Defendants.                     )
                                          )
_____)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

I.    **INTRODUCTION**

     Within a year of his hire in October, 2006, by defendant Center for Nonprofit

Advancement ("CNA")[1] as its first Director of Human Resources and Administration, plaintiff

Kirondeep Bhandari was fired in September, 2007, shortly after protesting defendant Johnson's

violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et

seq.;  (Amended Complaint, ¶¶ 4,10,14-16).[2]  Bhandari alleges several claims arising out of his

_____

[1] References to "CNA" include individual defendant Betsy Johnson depending on context.

[2] In accordance with Rule 15(a)(1), Bhandari has amended his Complaint principally (1) to
allege that defendant Johnson acted with malice in abolishing his job and terminating his
employment and (2) to request reinstatement as part of the appropriate equitable relief requested
in the original Complaint.  For purposes of defendants' Rule 12(b)(6) motion to dismiss, the

abrupt termination on September 24, 2007, including a claim of a retaliatory discharge in violation of ERISA, § 510, 29 U.S.C. § 1140 (Count I); a common law claim of wrongful discharge in violation of the federal public policy set forth in ERISA (Count II); and a claim that Johnson breached her fiduciary responsibilities as plan administrator, in violation of ERISA, § 404(a)(1) (Count III).  In addition, Bhandari alleges a tort claim that Johnson intentionally and maliciously interfered with his employment relationship with CNA (Count IV).

CNA moves to dismiss the entire Complaint for a variety of reasons, none of which withstands careful scrutiny.  Defendants request dismissal of plaintiff's § 510 claim (Count I) on the asserted ground that an internal complaint of suspected ERISA violations does not constitute protected activity under § 510.  See Defs' Mem. at 4, citing King v. Marriott Intl, Inc., 337 F. 3d 421 (4th Cir. 2003)  in which the Fourth Circuit narrowly construed § 510 to deny protection to whistleblowers like Bhandari who lodge intra-employer complaints of suspected ERISA violations, and are quickly fired before they can take their complaints elsewhere.  As shown below, the Fourth Circuit's narrow interpretation of § 510, which creates the perverse incentive of encouraging employees troubled by their employers' suspected ERISA violations to bypass management and seek government intervention at the outset, has been repudiated by a majority of the courts addressing the issue of whether § 510 covers intra-employer complaints - - an issue that remains open in the District of Columbia.  E.g., Hashimoto v. Bank of Hawaii, 999 F. 2d 408, 411 (9th Cir. 1993) (§ 510 "is clearly meant to protect whistle blowers"); Anderson v. Electronic Data Systems Corp., 11 F.3d 1311, 1314 (5th Cir. 1994) (claim that plaintiff was

---

allegations in Bhandari's Amended Complaint must be deemed true, and reasonable inferences must be drawn in his favor.  E.g., Wiggins v. District Cablevision, Inc., 853 F.Supp. 484, 487 (D.D.C. 1994); Fingerhut v. Children's National Medical Center, 738 A.2d 799, 803 (D.C. 1999) (underscoring that if allegations in a complaint, construed in plaintiff's favor, are sufficient, motion to dismiss may not be granted even if court "doubts that plaintiff will ultimately prevail" (internal citations omitted)).

illegally fired for reporting ERISA violations to management "falls squarely within the ambit of ERISA § 510" (internal citations omitted)); <u>Nicolaou v. Horizon Media, Inc.</u>, 402 F.3d 325, 329 (2nd Cir. 2005) ("the 'informal gathering of information' thus falls within the plain meaning of 'inquiry,' and we need go no further to conclude that it is protected by Section 510").

CNA requests dismissal of Count II principally on the ground that ERISA preempts state law wrongful termination claims. (Defs' Mem. at 6-7). As demonstrated below, ERISA's preemption provision does not reach Bhandari's retaliatory discharge claim, which does not allege a benefits – defeating motive and which can be resolved without interpreting the plan. <u>E.g.</u>, <u>Campbell v. Aerospace Corp.</u>, 123 F.3d 1308, 1313-14 (9th Cir. 1997).

Defendants also contend that federal law, including ERISA, cannot provide a source of public policy for purposes of the tort of abusive discharge in the District of Columbia. (Defs' Mem. at 7-10). Relevant authority, however, is to the contrary. <u>See e.g.</u>, <u>Liberatore v. Melville Corp.t/a CVS</u>, 168 F.3d 1326, 1327 (D.C.Cir. 1999) (federal law provides adequate source of public policy).

Johnson requests dismissal of Count III (breach of fiduciary duty) on the ground that plaintiff was not a "participant" in the plan at the time suit was initiated and, accordingly, lacks standing. (Defs'. Mem. at 10-12). Contrary to Johnson's mistaken assertion, Bhandari qualifies as a plan participant with standing because he has " a reasonable expectation of returning to covered employment." <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 117 (1989); <u>Alexander v. Anheuser-Busch Companies, Inc.</u>, 990 F.2d 536, 539 (10th Cir. 1993) ("participants" include "former employee[s] with a reasonable expectation of returning to covered employment"). Alternatively, Bhandari has standing under the "but for" approach adopted by many courts. (below, p. 15).

3

Johnson also evidently contends without supporting evidence that she performs only "ministerial" functions in overseeing plan administration and, accordingly, is not a "fiduciary" subject to suit under ERISA, § 404(a)(1). (Defs' Mem. at 13). Whether or not Johnson is a fiduciary presents a pivotal question of fact on which the record is silent. Plaintiff, accordingly, must be given an opportunity to discover evidence to undermine or refute untested, conclusory assertions in Johnson's Memorandum regarding her plan responsibilities.

Finally, Johnson contends that as a matter of law, she could not have tortiously interfered with the CNA-Bhandari employment relationship because she was acting as an agent of CNA in discharging plaintiff and CNA cannot interfere with its own contract. See Defs' Mem. at 14, citing Press v. Howard Univ., 540 A.2d 733, 736 (D.C. 1988) (University officers acting as agents of the University could not tortiously interfere with the employment contract between plaintiff and the University). In Sorrells v. Garfinckel's, 565 A.2d 285 (D.C. 1989), however, the Court of Appeals recognized an important exception to the Press rule, i.e., corporate officers who, like Johnson, procure a discharge of plaintiff "for an improprer or illegal purpose" are not shielded from liability by virtue of their status as corporate officers. Id. at 291 (expressly noting with approval application of the "no immunity" rule "even to corporate officers and directors").

In light of the foregoing, and for reasons explained more fully below, Bhandari requests that CNA's motion be denied.

## II.    STATEMENT OF UNDISPUTED FACTS[3]

Bhandari began his employment with CNA on October 10, 2006 as its first Director of Human Resources and Administration. The position was created by Johnson in response to

---

[3] The facts are drawn entirely from the Amended Complaint.

declining employee morale, mismanagement of human resource administration, and the filing of at least two lawsuits challenging CNA's employment practices.

Bhandari's responsibilities included managing employee benefit plans and, more generally, ensuring compliance by CNA with federal and state employment laws. Plaintiff received very favorable performance reviews, including a formal evaluation in July, 2007 in which his performance was rated "excellent." CNA awarded Bhandari a 5% salary increase, which typically is reserved for employees whose job performance is superior.

Over the course of several months during his brief tenure with CNA, Bhandari became increasingly concerned with Johnson's apparent violations of ERISA, which had depleted the Health Trust of more than half of its reserves. In mid-September, 2007, Bhandari alerted CNA's outside auditors to the problem. A few days later, Bhandari similarly alerted Derek Harps, Deputy President and President-elect of the Board of Trustees. Thus, in a September 19 e-mail to Harps, plaintiff protested CNA's continuing illegal failure to timely pay employee health insurance premiums and employee retirement contributions and charged that defendants improperly collected moneys from the Health Trust in part by coercing employees to falsify their time sheets to reflect work on behalf of the Trust that was never performed.

Two days after Bhandari "blew the whistle" on the illegal practices, Johnson notified him of CNA's decisions to eliminate his job, which had been created only a year earlier, and to terminate his employment.

## III.    <u>ARGUMENT</u>

###    A.    <u>Plaintiff Has Adequately Stated a Claim Under ERISA, § 510</u>

ERISA's anti-retaliation provision prohibits the discharge of an employee "because he has **given information** or has testified or is about to testify in any inquiry or proceeding relating

to this chapter." 29 U.S.C. § 1140 (emphasis added).  Section 510 protects two types of

activities, including (1) the  informal gathering and  imparting of information as part of an

"inquiry" and (2) formal testimony as part of a "proceeding."  <u>Nicolaou v. Horizon Media, Inc.</u>,

402 F.3d at 329 (§510 protection may be triggered regardless of whether a formal proceeding has

been instituted or even contemplated). [4]  Accordingly,  a careful reading of the language of § 510

supports the conclusion that employees like Bhandari who report ERISA violations to

management in the first instance are engaged in protected activity - - a conclusion that has been

embraced by three of the four Circuits addressing the question of § 510's application to

intracompany protests. (above, pp. 2-3).

    In any event, important policy considerations require that employees in Bhandari's

position be protected by § 510 if, in fact, they were fired for protesting ERISA violations.

Congress' evident objective in enacting § 510 was to protect whistleblowers.  <u>Hashimoto v. Bank</u>

<u>of Hawaii,</u> 999 F.2d at 411 (§ 510 "is clearly meant to protect whistleblowers").  As the Ninth

Circuit determined, § 510 would be a dead letter if employers could preemptively discharge

employees like Bhandari upon an initial presentation of the problem to the responsible managers

of the ERISA plan:

> The normal first step in giving information or testifying in any way that might
> tempt an employer to discharge one would be to present the problem first to the
> responsible managers of the ERISA plan.  If one is then discharged for raising the
> problem, the process of giving information or testifying is interrupted at its start:
> the anticipatory discharge discourages the whistle blower before the whistle is

---

[4] <u>Compare</u> Black's Law Dictionary 808 (8th ed. 2004) (defining "inquiry" as a "request for
information") and Webster's Third New International Dictionary 1167 (1993) (defining
"inquiry" as "the act or an instance of seeking truth, information, or knowledge…") with Black's
Law Dictionary 1241 (8th ed. 2004) (defining "proceeding" as the "regular and orderly
progression of a lawsuit" or a "procedural means for seeking redress from a tribunal or agency")
and Webster's Third New International Dictionary 1807 (1993) (defining "proceedings" as "the
course of procedure in a judicial action or in a suit in litigation").

blown.

999 F.2d at 411; see also Nicolaou v. Horizon Media, Inc., 402 F.3d at 329-330 (plaintiff who

gave information to defendant's president regarding the alleged underfunding of an ERISA plan,

and was discharged shortly thereafter, stated a claim under § 510); Hashimoto, 999 F.2d at 411-

12 (plaintiff, who was fired because of complaints to management regarding the bank's alleged

disregard of ERISA's reporting and disclosure requirements, stated a claim under § 510 even

though she never participated in a proceeding); Anderson v. Electronic Data Systems Corp., 11

F.3d 1314 (a claim that plaintiff was fired for reporting ERISA violations to management

"falls squarely within the ambit of ERISA § 510").

Relying upon the Fourth Circuit's decision in King v. Marriott Intl, Inc., 337 F.3d 421,

which reflects the minority view, defendants argue that Bhandari's "mere internal complaints,

without more, cannot support an ERISA retaliation claim." (Defs'. Mem. at 4). In King,

plaintiff alleged that she was discharged because she protested to her supervisor (and to in-house

counsel) a proposal to transfer money from her employer's medical plan into its general

corporate reserve account - - a transfer, she believed, that was prohibited by ERISA. Her

protests resulted in her discharge, and a subsequent suit in Maryland state court against Marriott

and her supervisor, alleging that her termination violated Maryland public policy. Defendants

removed the suit, contending that ERISA completely preempted her wrongful discharge claim.

Plaintiff then amended her complaint to add new claims, including an explicit § 510 anti-

retaliation claim.

The question before the district court (and the Fourth Circuit) was "whether ERISA

provides a civil remedy for the wrongs King alleges." 337 F.3d at 425. The Fourth Circuit, while

acknowledging that "[t]wo other Circuits have ruled otherwise," concluded that King's internal

complaints did not bring her conduct "within the ambit of section 510."  Id. at 428.  Accordingly,

Marriott was free under ERISA to fire King for her whistleblowing activity.[5]

     In seeking to justify this outcome, the Fourth Circuit, while acknowledging that

protecting King under § 510 might well be the better policy, mistakenly concluded that the

"better policy" could not be reconciled with the statutory language.[6]  As the Fourth Circuit

explained, § 510's reference to "giving information" is limited to the giving of non-testimonial

information **in a legal or administrative proceeding**.  This is so, the Court said, because of the

juxtaposition in § 510 of the phrase "testify or about to testify" with the terms "inquiry" and

"proceeding," which, according to the Fourth Circuit, means that "giving information" is

protected **only** in the context of a legal or administrative proceeding.  See King, 337 F.3d at 427-

28 (the absence of an allegation that King had testified in a legal or administrative proceeding, or

"that she had given information in such a proceeding," was fatal to her § 510 claim).

     The better reading of the critical language - - and the one embraced by a majority of

courts - - is that giving testimony in a proceeding has nothing to do with giving information in an

inquiry, and "inquiry" has nothing to do with "proceeding."  Simply stated, Congress intended to

---

[5] In a subsequent phase of the litigation, Maryland 's Court of Special Appeals followed the
Fourth Circuit's lead, concluding without independent analysis that § 510 did not protect King's
"intra-employment conduct" and, accordingly, could not serve as a basis of a public policy
claim.  See King v. Marriott, 866 A.2d 895, 905 (Md. App. 2005).

[6] The relevant portion of § 510 states:

    It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate
    against any person because he has given information or has testified or is about to testify
    in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans
    Disclosure Act.

29 U.S.C. § 1140.

protect not only formal testimony (or anticipated testimony) in an administrative or judicial

proceeding but also the informal gathering and imparting of information in a non-litigation

setting in pursuit of the truth (an "inquiry").  See Nicolaou v. Horizon Media, Inc. in which the

Second Circuit pointedly noted:

> As we read the statutory text, the reference to testimony is wholly irrelevant to
> our understanding of the language 'given information… in any inquiry or
> proceeding,' which is at issue in this case.  Our interpretation of Section 510 is
> based on the respective meanings of the terms 'inquiry' and 'proceeding,' not the
> juxtaposition of those terms with any reference to testimony.

402 F.3d at 330 n.3.

 Equally important, the Fourth Circuit's decision reflects an apparent disregard of

Congress' important objectives in enacting § 510.  Indeed, the Fourth Circuit chided the Ninth

Circuit for allowing consideration of Congress' objectives to "drive [its] interpretive analysis…"

of § 510.  337 F.3d at 428 n.4.  But, interpretation of ambiguous statutory language - - and § 510

is hardly free from doubt - - **should** be guided by an understanding of the legislative purposes.

In the final analysis, the Fourth Circuit in King has created the perverse incentive of

encouraging employees troubled by their employer's suspected ERISA violations to bypass

management altogether and seek government intervention at the outset.  Courts instead should

encourage employees to present the problem to management in the first instance and give

management an opportunity to remedy the problem without government intervention - - an

opportunity that seldom will arise if, as the Fourth Circuit would have it, internal whistleblowers

are denied the protection of § 510.

    **B.**    **Plaintiff Has Adequately Stated A Common Law Wrongful  Discharge Claim**

        **1.**    **The claim**

Under the "public policy" exception to the employment at will rule, an employee who has been discharged in a manner that contravenes public policy may bring a cause of action in tort for abusive or wrongful termination against his former employer. <u>Adams v. George W. Cochran & Co., Inc.</u>, 597 A.2d 28, 34 (D.C. 1991) (creating public policy exception to employment at will rule "when the sole reason or the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation"); <u>Carl v. Children's Hosp.</u>, 702 A.2d 159 (D.C. 1997) (expanding public policy exception recognized in <u>Adams</u> to include claims based on an identifiable policy that has been officially declared "in a statute or municipal regulation, or in the Constitution…").  In order to establish wrongful discharge, the employee must prove by a preponderance of the evidence that (1) he was discharged; (2) his discharge violated a clear mandate of public policy; and (3) a nexus exists between the employee's conduct and the employer's decision to fire the employee. <u>Id</u>.  As indicated previously, a public policy mandate supporting a wrongful discharge claim may be derived either from state or federal law.

Bhandari claims that he was terminated because he protested Johnson's false billing of the Health Trust, which plainly offends a fundamental public policy articulated by ERISA. Defendants contend that plaintiff's claim is preempted by ERISA, but if not, the claim should be dismissed in any event because of his asserted failure to adequately identify a public policy. (Defs' Mem. at 7-10).  Defendants' contentions are disposed of below.

## 2. ERISA does not preempt plaintiff's common law wrongful discharge claim

In support of ERISA preemption, defendants rely solely on the Supreme Court's decision in <u>Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. 133 (1990), which stands for the proposition that ERISA preempts state law claims alleging that the employer fired plaintiff to avoid paying him benefits under an employee benefit plan. <u>Id</u>. at 140 (a claim that the challenged discharge was

motivated by the employer's "desire to avoid contributing to, or paying benefits under, the employee's pension fund… 'relates to' an ERISA-covered plan within the meaning of § 514(a) and is therefore preempted"). [7]  Defendants contend without supporting analysis that Ingersoll-Rand is controlling and requires dismissal of Count II on preemption grounds.  As shown below, they are mistaken.

The Supreme Court, while frequently noting the breadth of ERISA's preemption provision, also has underscored that its preemptive reach is not without limit.  Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 100 n. 21 (1983) (state law may affect employee benefit plans "in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan").  More recently, in New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995), the Court acknowledged that the term "relate to" is not very helpful in determining the scope of preemption because "[i]f 'relate to' were taken to extend to the farthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for 'really, universally, relations stop nowhere.'" (citations omitted).  See also California Div. of Labor Standards Enforcement v. Dillingham Constr. N.A., Inc., 519 U.S.316, 325 (1997) (Scalia, J., concurring) (in light of the elasticity of the term "relate to," "[w]e simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." )

---

[7] Section 514(a) of ERISA, 29 U.S.C. § 1144(a), states, in part, that "the provisions of this subchapter… shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  See also District of Columbia v. Greater Washington Bd of Trade, 506 U.S. 125, 129 (1992) (a law "relates to" an employee benefit plan for purposes of § 514(a) if the law has a "connection with," or "reference to," a plan (internal citation omitted)).

In determining whether ERISA preempts common law wrongful discharge claims, the Supreme Court has focused on the employer's alleged motivation in terminating the employee, concluding that a claim is preempted when plaintiff alleges that "the employer had a [benefit]-defeating motive in terminating the employment." Ingersoll-Rand, 498 U.S. at 140; see also Campbell v. Aerospace Corp., 123 F.3d at 1312-13 ("where the plaintiff's claim or theory alleged that the employer terminated the employee to avoid paying benefits or sought to prevent the discharged employee from obtaining benefits, ERISA preempted the claim"). On the other hand, a wrongful discharge claim does not "relate to" a plan, and is not preempted by ERISA, where, as here, plaintiff contends that his termination was motivated, not by a desire to avoid paying benefits, but by a desire to retaliate for his whistleblowing. Id. at 1313 (plaintiff alleged that his employer's motive in firing him was not "the destruction of his retirement benefits," but the desire to retaliate against him for whistleblowing; preemption defense, rejected).

Bhandari alleges that he was fired in reprisal for his blowing the whistle on Johnson's ERISA violations. To prove his claim, Bhandari will not have to prove that defendants violated ERISA. Rather, the sole issue before the Court will be whether Bhandari was fired because of his whistleblowing, as he alleges, or because his position was abolished, as defendants contend. Resolution of the motivational issue will not require the Court to examine the plan or interpret its provisions. Resolution of the motivational issue will not subject the plan or plan sponsors to the risk of different state standards governing their conduct. Ingersoll-Rand, 498 U.S. at 142 (Congress' objective in passing ERISA's preemption provision was "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law…"). Nor would the operation of state law have a discernible adverse impact on the plan or its administration.

Bhandari's arguments, while obviously dependent on the existence of a plan in a general sense, will affect the plan (if at all) in merely a "tenuous, remote or peripheral" manner.  Shaw, 463 U.S. at 100 n. 21.  Accordingly, and for the reasons stated, ERISA does not preempt Count II.

> **3.    Contrary to defendants' mistaken assertion, ERISA provides an adequate public policy basis for plaintiff's wrongful discharge claim_____**

As indicated, Bhandari alleges that he was wrongfully discharged in violation of the public policy set forth in ERISA.  Defendants mistakenly argue that "ERISA does not provide a public policy basis on which to ground a state wrongful discharge action in the District of Columbia, since ERISA expresses federal, not state public policy." (Defs. Mem. at 7).

As defendants explain, the District of Columbia Court of Appeals, in marking the boundaries of the public policy exception, has "invariably looked not to federal, but to the District's own public policy."  Id. at 8.  Although public policy claims in the District of Columbia have relied more often on local, rather than federal, law, the courts have unequivocally confirmed that federal law also may provide the basis of a public policy claim.  Liberatore v. Melville Corp. t/a CVS, 168 F.3d at 1327; compare King v. Marriott Int'l, Inc., 866 A.2d at 902 n. 8 ("Public policy mandates supporting wrongful discharge claims have been found in both Maryland and federal statutes, regulations, and to the extent consistent, the common law.")[8]

Defendants argue, in addition, that because ERISA "both creates the right on which Bhandari necessarily sues and… provides a comprehensive civil enforcement scheme…" for vindication of the right, he cannot also pursue remedies under the common law.  (Defs' Mem. at

---

[8] None of the cases on which defendants rely even addresses the issue of whether state law is the exclusive source of public policy for purposes of a wrongful discharge claim. (Defs' Mem. at 8).

9-10). Defendants, however, contend vigorously that Bhandari does not **have** a statutory

remedy; accordingly, they can scarcely raise ERISA's "comprehensive civil enforcement

scheme" as a bar to a common law claim. Swinney v. General Motors Corp., 46 F.3d 512, 519

(6th Cir. 1995) ("We would clearly frustrate Congress's intent 'to remove jurisdictional and

procedural obstacles' if we held that ERISA preempts the plaintiffs' state law claims and yet

denies them standing to pursue a federal claim").

C.    **Plaintiff Has Adequately Stated A Claim Against Defendant Johnson Under
      ERISA, § 404(a)(1) For Breach Of Fiduciary Duty**

1.    **Bhandari qualifies as a "participant" with standing to sue**

ERISA allows a "participant" in an employee benefit plan to bring a civil action to

enforce the provisions of ERISA. See 29 U.S.C. § 1132. ERISA defines the term "participant'"

to include former employees who "may become eligible to receive a benefit" under an employee

benefit plan. 29 U.S.C. § 1002(7). The Supreme Court has defined "participant" to mean "either

employees in, or reasonably expected to be in, currently covered employment, or former

employees who have… a reasonable expectation of returning to covered employment or who

have a colorable claim to vested benefits." Firestone Tire & Rubber Co., v. Bruch, 489 U.S. at

117. A "reasonable expectation" of returning to covered employment may be based simply on

plaintiff's assertion of a statutory right to reinstatement and/or a request therefor. Felix v. Lucent

Technologies, Inc., 387 F.3d 1146, 1162 (10th Cir. 2004).

Application of the foregoing principles compels the conclusion that Bhandari has

standing to sue under ERISA, § 404(a) (1). He has asserted a statutory right to, and request for,

reinstatement. (above, p.1 n.1). Nothing more is required to confer standing.

14

In addition, several circuits have recognized "but for" standing of former employees, i.e., "but for" the employer's violation of ERISA, the former employee would be a plan participant with standing to sue. E.g., Christopher v. Mobil Oil Corp., 950 f.2d 1209, 1221 (5th Cir. 1992) (adopting "but for" approach to standing in non-§ 510 context); Mullins v. Pfizer, Inc., 23 F.3d 663, 668 (2nd Cir. 1994) (rejection of "but for" standing theory would have "the anomalous effect of allowing a fiduciary to defeat standing through her own malfeasance).[9]

Obviously, "but for" Johnson's abrupt termination of his employment, Bhandari would remained a plan participant. For this reason also, he has standing to sue.

Defendants do not really dispute the foregoing principles. Instead, they argue that Bhandari does not "allege entitlement to benefits, vested or otherwise," and, accordingly, cannot have standing. (Defs' Mem. at 12). Whether or not Bhandari has a colorable claim to vested benefits is irrelevant; he qualifies as a participant simply because he has a reasonable expectation of returning to covered employment.[10]

### 2. A determination of Johnson's fiduciary status on the basis of the pleadings is premature

ERISA defines "fiduciaries" to include individuals who exercise "authority or control respecting management or disposition" of plan assets. 29 U.S.C. § 1002(21)(A). A

---

[9] See also Vartarian v. Monsanto Co., 14 F.3d 697, 700-01 (1st Cir. 1994) (accord); Home v. Varity Corp., 36 F. 3d 746 (8th Cir. 1994) (accord); Swinney v. General Motors Corp, 46 F.3d at 519 (joining several other circuits in approving "but for" standing)

[10] In support of her standing argument, Johnson mistakenly relies on Alexander v. Anheuser-Busch Companies, Inc., 990 F.2d at 536, in which the Tenth Circuit determined that plaintiff, who was not employed by Anheuser-Busch at the time suit was filed, did not "appear" to have a reasonable expectation of returning to covered employment because his former employer had "twice rejected his application to return, and his complaint does not request reinstatement." Id. at 539. In contrast to Alexander, Bhandari requests reinstatement and therefore has a "reasonable expectation" of reemployment. Accordingly, the Tenth Circuit's decision is of no help to defendants.

determination of fiduciary status is a fact-intensive inquiry that focuses on the individual's "functional terms of control and authority over the plan," including "the active interpretation of employee benefit plans, the management and disbursement of fund assets, the approval and rejection of claims, and the rendering of ultimate decisions regarding benefits eligibility." CSA 401(K) Plan v. Pension Professionals, Inc., 195 F.3d 1135, 1138 (9th Cir. 1999).

Johnson suggests in her Memorandum (p. 13) that that she is not a "fiduciary" because she performs only "ministerial" functions with respect to the plan.  Whether or not Johnson accurately characterizes her responsibilities is a question of fact that cannot be decided on the basis of the pleadings alone, but will have to await the development of a full record. Accordingly, Johnson's request to dismiss the claim - - a request supported by nothing more than her self-proclaimed non-fiduciary status - - is premature and should be denied.

**D**.    **Plaintiff Has Adequately Stated A Claim Against Johnson Of Tortious Interference With His Employment Relationship With CNA_____**

Johnson contends that as a matter of law, she could not have tortiously interfered with the CNA-Bhandari employment relationship because she was acting as an agent of CNA in discharging plaintiff and CNA cannot interfere with its own contract (above, p.4).  As Johnson points out, corporate officers acting as agents of the corporation are generally not "third parties" capable of interfering with a contract or relationship between the corporation and plaintiff.  See Defs' Mem. at 14, citing  Press. v. Howard University, 540 A.2d at 736.  But, Press' grant of immunity from liability does not apply to corporate officers who "procure [] a discharge of the plaintiff for an improper or illegal purpose."  Sorrells, 565 A.2d at 291 (internal citation omitted).  Stated somewhat differently, a corporate officer or director who acts with malice loses his privilege.  See id., citing with approval Phillips v. Montana Education Ass'n, 610 P.2d 154,

158 (Mont. 1980) ("Where an officer or director acts… with the intent to harm the plaintiff, he is personally liable"); <u>Kassman v. American University,</u> 178 U.S. App. D.C. 263, 266, 546 F.2d 1029, 1032 (D.C. Cir. 1976) (a defendant who acts "within the ambit of [his or her] employment but with malice" loses immunity from suit).

Bhandari alleges that Johnson, in abolishing his job and terminating his employment, acted maliciously and with intent to harm him. The Complaint's  underlying factual allegations, presumed true for Rule 12(b)(6) purposes, lend significant credence to the allegations of malice.

Johnson at least tacitly acknowledges that if <u>Sorrells</u>' malice exception applies to her as CNA's Executive Director, she would not be immune from liability.  Accordingly, she argues that <u>Sorrells</u> left open the question of whether the malice exception applies to corporate officers. (Defs' Mem. at 15 n.4).  Not so. In fact, the Court of Appeals in <u>Sorrells</u> could scarcely have been more explicit in answering the question Johnson claims was left open:  "The rule [that malice defeats <u>Press</u>' grant of immunity from liability] has been applied even to corporate officers and directors." 565 A.2d at 291.[11]

## <u>CONCLUSION</u>

For the reasons stated, plaintiff requests that defendants' motion to dismiss be denied.

---

[11]Johnson misplaces her reliance on <u>Langer v. George Washinton Univ</u>., 498 F. Supp. 2d 196, 202 (D.D.C. 2007), which does not address the malice issue.  Indeed, the court did not have occasion to consider the issue because plaintiff challenged only the conduct of a supervisor, not a corporate officer.

Respectfully submitted,

**LAW OFFICES OF STEVEN C. KAHN**

By:_____/s/_____

Steven C. Kahn
D.C. Bar #330431
401 E. Jefferson Street, Suite 201
Rockville, MD 20850
(301)-838-4113

Attorneys for Plaintiff

February 6, 2008

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 6, 2008, a copy of the foregoing Memorandum and proposed Order was electronically served on

> Charles H. Fleischer, Esq.
> Oppenheimer, Fleischer & Quiggle, P.C.
> 7700 Old Georgetown Road  Suite 800
> Bethesda, MD 20814
>
> Attorneys for Defendants


                                    _____/s/_____
                                              Steven C. Kahn

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

KIRONDEEP BHANDARI              )
                                     )
                                     )
             Plaintiff,           )     Case No.07-2232ESH
      v.                        )
                                     )     JURY DEMANDED
CENTER FOR NONPROFIT ADVANCEMENT  )
                                     )
           and                  )
                                     )
BETSY JOHNSON, an individual      )
                                     )
                                     )
           Defendants.        )
                                     )
_____)

## <u>ORDER</u>

This matter came before the Court on defendants' motion to dismiss.  Based on

defendants' submission and plaintiff's opposition, **IT IS HEREBY ORDERED**, that the motion

be denied.

                                              _____
                                              Judge Ellen Segal Huvelle

Entered this _____ day of _____, 2008

Copies To:

Charles H. Fleischer
7700 Old Georgetown Road, Suite 800
Bethesda, MD 200814
Counsel for Defendants

Steven C. Kahn
Law Offices of Steven C. Kahn
401 E. Jefferson Street, Suite 201
Rockville, MD 20850
Counsel for Plaintiff