IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
KIRONDEEP BHANDARI                      )
4908 45th Street, N.W.                  )
Washington, D.C. 20016                  )
                                        )
          Plaintiff,                    )   Case No.07-2232ESH
   v.                                   )
                                        )   JURY DEMANDED
CENTER FOR NONPROFIT ADVANCEMENT        )
1660 K Street, N.W.                     )
Suite 440                               )
Washington, D.C. 20006                  )
                                        )
   and                                  )
                                        )
BETSY JOHNSON, an individual            )
1666 K Street, N.W. Suite 440           )
Washington, D.C. 20006                  )
                                        )
          Defendants.                   )
                                        )
_____)

## FIRST AMENDED COMPLAINT OF RETALIATORY DISCHARGE

Plaintiff Kirondeep Bhandari alleges:

**JURISDICTION AND VENUE**

1.  Subject matter jurisdiction is conferred on this Court by ERISA, §502(e)(1), (f), 29 U.S.C. §1132(e)(1),(f). The Court may exercise supplemental jurisdiction over the common law claims.

2.  Venue properly lies in the District of Columbia where the challenged conduct occurred.

**PARTIES**

3.  Plaintiff Kirondeep Bhandari is a resident of the District of Columbia. At relevant times, Plaintiff was employed by the Center for Nonprofit Advancement ("CNA" or "Center") as its Director of Human Resources and Administration. His responsibilities included managing employee benefit plans and, more generally, ensuring compliance by CNA with federal and state employment laws.

4.  Plaintiff was hired by Defendants on October 10, 2006 to serve as its first Director of Human Resources and Administration. The position was created by Defendant Johnson in response to declining employee morale, mismanagement of human resource administration, and the filing of at least two lawsuits challenging CNA's employment practices.

5.  The Center is a tax-exempt, nonprofit corporation headquartered in the District of Columbia. The Center, with 12 employees and revenues of approximately $2 million dollars, serves the nonprofit community through education, advocacy, nonprofit community building, and group purchasing.

6.  Defendant Betsy Johnson, to whom Plaintiff reported before his illegal discharge, has served as CNA's Executive Director since 1988. At relevant times, she was an administrator of an employee benefit plan covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 et seq.

**COMMON ALLEGATIONS**

7.  To increase membership in CNA, Defendants offer nonprofit organizations that join CNA the opportunity to enroll their employees in an insurance program sponsored by the Center for Nonprofit Advancement Benefits Trust ("Health Trust"). Under the provisions of the

Health Trust, which is administered by CNA as a separate legal entity, the Center may claim reimbursement for the hours that CNA employees devote to trust-related work. The number of hours for which CNA claims reimbursement is based on time sheets maintained by CNA employees.

8.  In order to increase Health Trust reimbursements to CNA, Defendant Johnson instructed Plaintiff - - within three months of his assuming his position - - to inflate his "trust" hours on his time sheet. Defendant Johnson also instructed several other employees to falsify their time sheets by recording fictitious hours devoted to health trust issues.

9.  Defendant Johnson falsified her own time sheets to indicate that 80% or more of her time was devoted to the Health Trust. In fact, she spent only a very small percentage of her time on trust issues.

10.  On July 31, 2007, Defendant Johnson rated Plaintiff's performance "excellent." Plaintiff was awarded a 5% salary increase, which typically is reserved for employees whose job performance is superior.

11.  In August, 2007, Defendant Johnson instructed CNA employees, including Plaintiff, to take four days off and to falsify their time sheets by recording the missed days as hours devoted to the Health Trust.

12.  In a September 19, 2007, e-mail to Derek Harps, Deputy President and President elect of the Board of Trustees, Plaintiff, in addition to noting the Center's continuing illegal failure to timely pay employee health insurance premiums and employee retirement contributions, charged that "employees are coerced to falsify their time sheets to record fictitious time spent on the Health program so that the Center can collect vastly exaggerated amounts by way of reimbursements from the Health Trust." In fact, Defendant Johnson, through the

coercive and illegal activities described above (¶¶8-10), unlawfully drained the Health Trust of more than half of its reserves, which are set aside for legitimate plan expenses and providing low cost health insurance to the small nonprofits in the Washington Metropolitan Area.

13.     On Monday, September 24, 2007, two business days after Plaintiff "blew the whistle" on Defendants' illegal practices, Defendant Johnson notified Plaintiff of her decisions to eliminate his job, which had been created only a year earlier, and to terminate his employment. Defendant Johnson attributed her decisions to the Center's "current financial condition," noting that Plaintiff's position was "redundant and therefore superfluous."

14.     In fact, Defendants abolished the position of Director of Human Resources and Administration, and terminated Plaintiff's employment, in retaliation for his engaging in the protected activity of blowing the whistle on Defendants' fraudulent and illegal practices.

## COUNT I

### (Retaliatory Discharge in Violation of ERISA, §510)

15.     Plaintiff incorporates ¶¶1-15.

16.     Defendant CNA and Defendant Johnson were at relevant times Plaintiff's "employer" as defined by ERISA, 29 U.S.C. §1002(5), (9).

17.     Plaintiff was at relevant times an "employee" of Defendants, as defined by 29 U.S.C. §1002(6), and a "participant" in an employee benefit plan as defined by ERISA, 29 U.S.C. §1002(6), (7) and 29 U.S.C. § 1132(a).

18.     Plaintiff engaged in statutorily protected activity by reporting suspected violations of ERISA to Derek Harps and to CNA's Board of Directors, and by expressing opposition to conduct he reasonably believed constituted a breach of fiduciary duties by plan trustees and administrators.

19.     Plaintiff's highly visible, protected activity was a motivating factor in Defendants' decisions to abolish his job and to terminate his employment.

20.     Plaintiff was discharged in retaliation for exercising his statutory rights, in violation of §510 of ERISA, 29 U.S.C. §1140.

21.     As a direct and proximate cause of Defendants' retaliatory discharge, Plaintiff has suffered, and continues to suffer, lost wages, past, present and future, and forfeiture of employee benefits.

**WHEREFORE,** Plaintiff requests that this Court enter judgment against Defendants, jointly and severally, and award him back pay and front pay, in amounts for which he is found entitled; restitution of forfeited employee benefits; other appropriate legal and equitable relief**;** and attorney's fees and costs reasonably incurred in prosecuting this action.

## COUNT II

### (Wrongful Discharge in Violation of Public Policy)

22.     Plaintiff incorporates ¶¶1-22.

23.     By reporting to the Board of Trustees Defendants' fraudulent and illegal treatment of plan assets, and by threatening to report the illicit conduct to the Department of Labor, Plaintiff was engaged in protected activity that furthered the public welfare and interest.

24.     Plaintiff's protected activity was a motivating factor in his discharge.

25.     A causal relationship exists between Plaintiff's protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendants,

jointly and severally, and award him back pay and front pay, in amounts for which he is found entitled; restitution of forfeited employee benefits; compensatory and punitive damages; and other appropriate legal and equitable relief.

## COUNT III

**(Breach of Fiduciary Duty in Violation of ERISA, § 404(a)(1) - - Defendant Johnson)**

26.     Plaintiff incorporates ¶¶1-26.

27.     At relevant times, Defendant Johnson was a plan administrator with fiduciary responsibilities to participants and beneficiaries.

28.     By engaging in the conduct described above, including, but not limited to, depleting plan assets by fraudulently claiming (and accepting) reimbursement from the trust for fictitious hours, Defendant Johnson breached her fiduciary responsibilities to plan participants and beneficiaries.

29.     By dealing with plan assets in order to further her own interests, rather than the interests of the plan, Defendant Johnson violated the exclusive benefit rule, which requires that a fiduciary's activities on behalf of a plan be for the sole purpose of providing benefits to participants and beneficiaries, or for defraying the plan's legitimate administrative expenses.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant Johnson and award appropriate legal and equitable relief, including, but not limited to, reimbursement to the plan of losses resulting from her illegal conduct and an injunction ordering her removal as plan administrator.

## COUNT IV

**(Tortious Interference with an Advantageous Business Relationship - - Defendant Johnson)**

30. Plaintiff incorporates ¶¶1-30.

31. Plaintiff had an advantageous employment relationship with Defendant CNA.

32. Defendant Johnson intentionally interfered with Plaintiff's advantageous relationship by terminating Plaintiff and/or recommending to the Board that her employment be terminated. In doing so, Defendant Johnson intended to silence Plaintiff from continuing to protest her mismanagement of the plan and her illegal treatment of plan assets.

33. Defendant Johnson caused CNA to terminate its relationship with Plaintiff in order to protect her own employment and position with the Center.

34. As a direct and proximate result of Defendant Johnson's wrongful interference, Plaintiff has suffered, and continues to suffer, lost pay, past, present and future, employee benefits and emotional distress.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant Johnson and award him economic and non-economic damages sustained as a direct and proximate result of her wrongful interference; punitive damages; and other legal and equitable relief, deemed appropriate at the time of final judgment.

## JURY DEMAND

Plaintiff demands a trial by jury on his non-ERISA claims.

        Respectfully submitted,

        **LAW OFFICES OF STEVEN C. KAHN**


By:_____/s/_____
        Steven C. Kahn
        D.C. Bar #330431
        401 E. Jefferson Street, Suite 201
        Rockville, MD 20850
        (301)-838-4113

        Attorneys for Plaintiff

Dated:  February 7, 2008

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 7, 2008, a copy of the foregoing Amended Complaint was served electronically upon:

>Charles H. Fleischer, Esq.
>Oppenheimer, Fleischer & Quiggle, P.C.
>7700 Old Georgetown Road  Suite 800
>Bethesda, MD 20814
>
>Attorneys for Defendants

                                             /s/
                                        Steven C. Kahn

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
KIRONDEEP BHANDARI                )
4908 45th Street, N.W.            )
Washington, D.C. 20016            )
                                  )
       Plaintiff,                 )   Case No.07-2232ESH
  v.                              )
                                  )   JURY DEMANDED
CENTER FOR NONPROFIT ADVANCEMENT  )
1660 K Street, N.W.               )
Suite 440                         )
Washington, D.C. 20006            )
                                  )
       and                        )
                                  )
BETSY JOHNSON, an individual      )
1666 K Street, N.W. Suite 440     )
Washington, D.C. 20006            )
                                  )
       Defendants.                )
                                  )
_____)

**FIRST AMENDED COMPLAINT OF RETALIATORY DISCHARGE**

Plaintiff Kirondeep Bhandari alleges:

**JURISDICTION AND VENUE**

1.   Subject matter jurisdiction is conferred on this Court by ERISA, §502(e)(1), (f), 29 U.S.C. §1132(e)(1),(f). The Court may exercise supplemental jurisdiction over the common law claims.

2.   Venue properly lies in the District of Columbia where the challenged conduct occurred.

**PARTIES**

3.  Plaintiff Kirondeep Bhandari is a resident of the District of Columbia. At relevant times, Plaintiff was employed by the Center for Nonprofit Advancement ("CNA" or "Center") as its Director of Human Resources and Administration. His responsibilities included managing employee benefit plans and, more generally, ensuring compliance by CNA with federal and state employment laws.

4.  Plaintiff was hired by Defendants on October 10, 2006 to serve as its first Director of Human Resources and Administration. The position was created by Defendant Johnson in response to declining employee morale, mismanagement of human resource administration, and the filing of at least two lawsuits challenging CNA's employment practices.

5.  The Center is a tax-exempt, nonprofit corporation headquartered in the District of Columbia. The Center, with 12 employees and revenues of approximately $2 million dollars, serves the nonprofit community through education, advocacy, nonprofit community building, and group purchasing.

6.  Defendant Betsy Johnson, to whom Plaintiff reported before his illegal discharge, has served as CNA's Executive Director since 1988. At relevant times, she was an administrator of an employee benefit plan **(Center for Nonprofit Advancement Benefits Trust)** covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 et seq.

**COMMON ALLEGATIONS**

7.  To increase membership in CNA, Defendants offer nonprofit organizations that join CNA the opportunity to enroll their employees in an insurance program sponsored by the Center for Nonprofit Advancement Benefits Trust ("Health Trust"). Under the provisions of the

Health Trust, which is administered by CNA as a separate legal entity, the Center may claim reimbursement for the hours that CNA employees devote to trust-related work. The number of hours for which CNA claims reimbursement is based on time sheets maintained by CNA employees.

8.      In order to increase Health Trust reimbursements to CNA, Defendant Johnson instructed Plaintiff - - within three months of his assuming his position - - to inflate his "trust" hours on his time sheet. Defendant Johnson also instructed several other employees to falsify their time sheets by recording fictitious hours devoted to health trust issues.

9.      Defendant Johnson falsified her own time sheets to indicate that 80% or more of her time was devoted to the Health Trust. In fact, she spent only a very small percentage of her time on trust issues.

10.     On July 31, 2007, Defendant Johnson rated Plaintiff's performance "excellent." Plaintiff was awarded a 5% salary increase, which typically is reserved for employees whose job performance is superior.

11.     In August, 2007, Defendant Johnson instructed CNA employees, including Plaintiff, to take four days off and to falsify their time sheets by recording the missed days as hours devoted to the Health Trust.

**12.     On September 14, 2007, CNA's outside auditors contacted Plaintiff in connection with their audit of CNA's health plan. Plaintiff reported to the auditors the misconduct of defendant Johnson alleged above (¶¶ 8-9, 11).**

13.     In a September 19, 2007, e-mail to Derek Harps, Deputy President and President elect of the Board of Trustees, Plaintiff, in addition to noting the Center's continuing illegal failure to timely pay employee health insurance premiums and employee retirement

contributions, charged that "employees are coerced to falsify their time sheets to record fictitious time spent on the Health program so that the Center can collect vastly exaggerated amounts by way of reimbursements from the Health Trust." In fact, Defendant Johnson, through the coercive and illegal activities described above (¶¶8-10), unlawfully drained the Health Trust of more than half of its reserves, which are set aside for legitimate plan expenses and providing low cost health insurance to the small nonprofits in the Washington Metropolitan Area.

14. On Monday, September 24, 2007, two business days after Plaintiff "blew the whistle" on Defendants' illegal practices, Defendant Johnson notified Plaintiff of her decisions to eliminate his job, which had been created only a year earlier, and to terminate his employment. **Defendant Johnson acted with malice in abolishing Plaintiff's position and terminating his employment.** Defendant Johnson attributed her decisions to the Center's "current financial condition," noting that Plaintiff's position was "redundant and therefore superfluous."

15. In fact, Defendants abolished the position of Director of Human Resources and Administration, and terminated Plaintiff's employment, in retaliation for his engaging in the protected activity of blowing the whistle on Defendants' fraudulent and illegal practices.

### COUNT I
### (Retaliatory Discharge in Violation of ERISA, §510)

16. Plaintiff incorporates ¶¶1-15.

17. Defendant CNA and Defendant Johnson were at relevant times Plaintiff's "employer" as defined by ERISA, 29 U.S.C. §1002(5), (9).

18. Plaintiff was at relevant times an "employee" of Defendants, as defined by 29

U.S.C. §1002(6), and a "participant" in an employee benefit plan as defined by ERISA, 29 U.S.C. §1002(6), (7) and 29 U.S.C. § 1132(a).

19. Plaintiff engaged in statutorily protected activity by reporting suspected violations of ERISA to Derek Harps and to CNA's Board of Directors, **and outside auditors**, and by expressing opposition to conduct he reasonably believed constituted a breach of fiduciary duties by plan trustees and administrators.

20. Plaintiff's highly visible, protected activity was a motivating factor in Defendants' decisions to abolish his job and to terminate his employment.

21. Plaintiff was discharged in retaliation for exercising his statutory rights, in violation of §510 of ERISA, 29 U.S.C. §1140.

22. As a direct and proximate cause of Defendants' retaliatory discharge, Plaintiff has suffered, and continues to suffer, lost wages, past, present and future, and forfeiture of employee benefits.

**WHEREFORE,** Plaintiff requests that this Court enter judgment against Defendants, jointly and severally, and award him back pay and front pay, in amounts for which he is found entitled; restitution of forfeited employee benefits; other appropriate legal and equitable relief**, including reinstatement;** and attorney's fees and costs reasonably incurred in prosecuting this action.

### COUNT II

**(Wrongful Discharge in Violation of Public Policy)**

23. Plaintiff incorporates ¶¶1-22.

24. By reporting to the Board of Trustees **and others** Defendants' fraudulent and illegal

treatment of plan assets, and by threatening to report the illicit conduct to the Department of Labor, Plaintiff was engaged in protected activity that furthered the public welfare and interest.

25. Plaintiff's protected activity was a motivating factor in his discharge.

26. A causal relationship exists between Plaintiff's protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendants, jointly and severally, and award him back pay and front pay, in amounts for which he is found entitled; restitution of forfeited employee benefits; compensatory and punitive damages; and other appropriate legal and equitable relief, **including reinstatement**.

## COUNT III

**(Breach of Fiduciary Duty in Violation of ERISA, § 404(a)(1) - - Defendant Johnson)**

27. Plaintiff incorporates ¶¶1-26.

28. At relevant times, Defendant Johnson was a plan administrator with fiduciary responsibilities to participants and beneficiaries.

29. By engaging in the conduct described above, including, but not limited to, depleting plan assets by fraudulently claiming (and accepting) reimbursement from the trust for fictitious hours, Defendant Johnson breached her fiduciary responsibilities to plan participants and beneficiaries.

30. By dealing with plan assets in order to further her own interests, rather than the interests of the plan, Defendant Johnson violated the exclusive benefit rule, which requires that a fiduciary's activities on behalf of a plan be for the sole purpose of providing benefits to participants and beneficiaries, or for defraying the plan's legitimate administrative expenses.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant

Johnson and award appropriate legal and equitable relief, including, but not limited to, reimbursement to the plan of losses resulting from her illegal conduct and an injunction ordering her removal as plan administrator.

### COUNT IV

**(Tortious Interference with an Advantageous Business Relationship - - Defendant Johnson)**

31. Plaintiff incorporates ¶¶1-30.

32. Plaintiff had an advantageous employment relationship with Defendant CNA.

33. Defendant Johnson intentionally **and maliciously** interfered with Plaintiff's advantageous relationship by terminating Plaintiff and/or recommending to the Board that her employment be terminated. In doing so, Defendant Johnson intended to silence Plaintiff from continuing to protest her mismanagement of the plan and her illegal treatment of plan assets.

34. Defendant Johnson **maliciously** caused CNA to terminate its relationship with Plaintiff in order to protect her own employment and position with the Center.

35. As a direct and proximate result of Defendant Johnson's wrongful interference, Plaintiff has suffered, and continues to suffer, lost pay, past, present and future, employee benefits and emotional distress.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant Johnson and award him economic and non-economic damages sustained as a direct and proximate result of her wrongful interference; punitive damages; and other legal and equitable relief, **including reinstatement**, deemed appropriate at the time of final judgment.

### JURY DEMAND

Plaintiff demands a trial by jury on his non-ERISA claims.

       Respectfully submitted,

       **LAW OFFICES OF STEVEN C. KAHN**

By:_____/s/_____
    Steven C. Kahn
    D.C. Bar #330431
    401 E. Jefferson Street, Suite 201
    Rockville, MD 20850
    (301)-838-4113

    Attorneys for Plaintiff

Dated: February 7, 2008

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 7, 2008, a copy of the foregoing Amended Complaint was served electronically upon:

>Charles H. Fleischer, Esq.
>Oppenheimer, Fleischer & Quiggle, P.C.
>7700 Old Georgetown Road  Suite 800
>Bethesda, MD 20814
>
>Attorneys for Defendants

                                                                                           _____/s/_____
                                                                                                Steven C. Kahn