UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KIRONDEEP BHANDARI** | )<br>)<br>) |
| Plaintiff | )<br>) |
| v. | ) Case No. 07-2232 ESH<br>) |
| **CENTER FOR NONPROFIT ADVANCEMENT**, *et al.*, | )<br>)<br>) |
| Defendants | )<br>) |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS**

Defendants Center for Nonprofit Advancement (Center) and Betsy Johnson (Johnson), by their attorneys, submit this reply in support of their motion to dismiss.[1]

**I.**

In response to the defendants' motion to dismiss, plaintiff Kirondeep Bhandari (Bhandari) filed a First Amended Complaint adding an allegation that Bhandari responded to an auditor's request about alleged ERISA violations (Amend. Cmplt. ¶¶ 12, 19 and 24);

---

[1] The defendants intend their motion to dismiss, their memorandum in support, and this reply, to address the First Amended Complaint. *See Sunset Finan. Resources, Inc. v. Redevelopment Group V, LLC*, 417 F.Supp.2d 632, 642 (D.N.J. 2006) ("[A] defendant should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. Rather, if some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading" (quotation marks, citations and text alteration indicators omitted). As shown below, the defects in Bhandari's original pleading persist in his First Amended Complaint.

an allegation that Johnson acted with malice in abolishing Bhandari's position at the Center (Amend. Cmplt. ¶¶ 14, 33 and 34); and a prayer for reinstatement at the Center (Counts I, II and IV).  Otherwise, the First Amended Complaint is identical to Bhandari's original filing.

The defendants show below that neither these additions, nor the argument set forth in Bhandari's Memorandum in Opposition, undercuts the grounds for dismissal.  Therefore, for the reasons stated in the defendants' initial memorandum and this reply, the motion to dismiss should be granted.

## II.

### A.  Count I (ERISA Retaliation)

Bhandari has attempted to cure his original ERISA retaliation count by adding an allegation that he also responded to the Center's outside auditors, reporting to them the alleged misconduct that underlies his case.  Amend. Cmplt. ¶¶ 12, 19 and 24.  This new allegation still fails to distinguish the claim from *King v. Marriott Int'l, Inc.*, 337 F.3d 421 (4th Cir. 2003) (*King I*), where dismissal was granted despite the complainant's having raised objections to a proposed ERISA plan transaction over a three-year period; having complained twice to a Senior Vice President and two in-house attorneys; and having requested an opinion letter from one of the attorneys.  *Accord*, *King v. Marriott Int'l, Inc.*, 866 A.2d 895, 905 (Md. App. 2005) (*King II*) ("[ERISA] does not provide protection for intra-employment conduct."

Implicitly conceding that his claim would fail under *King*, Bhandari accuses the Fourth Circuit of "narrowly constru[ing]" ERISA's retaliation provision, 29 U.S.C. § 1140,

(Opp. at 2). In fact, the Fourth Circuit's construction is faithful to the statutory language. The statute says:

> It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify *in any inquiry or proceeding* relating to this chapter.

29 U.S.C. § 1140 (emphasis added). The phrase "given information" is necessarily tied to and modified by "inquiry or proceeding." The statute also makes clear the kind of inquiry or proceeding that must be involved: one that is susceptible of receiving testimony "relating to" ERISA. Otherwise, the phrase has no context and begs the further question, To whom and in what circumstances must the information be given in order for § 1140 to apply? Only by untethering the phrase from the rest of the statute can Bhandari justify his claim to be "interpret[ing] . . . ambiguous statutory language." Opp. at 9. [2]

The cases on which Bhandari relies (Opp. at 2-3), cannot claim fidelity to the statute. They represent, in *King I's* words, merely a "policy preference" not rooted in the text. *King I*, 337 F.3d at 428 n.4. As the Supreme Court made clear in *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), interpreting Title VII's retaliation provision, the actual words in the statute matter. In that case, the Court rejected the Solicitor General's argument, that Title VII's discrimination and retaliation provisions should be read *in pari*

---

[2] The dictionary definition of "inquiry" quoted by Bhandari (Opp. at 6 n.4) offers no guidance. Regardless of what the term may mean in general parlance, it is qualified here by the phrase "in any inquiry or proceeding."

*materia,* because the discrimination provision contains limiting words that do not appear in the latter. *Id*. at 60.

Here, unlike Title VII's retaliation provision, § 1140 *does* contain limiting words, requiring that the information or testimony be given in a testimonial-type "inquiry or proceeding relating to" ERISA. Since Bhandari does not allege any such conduct, he enjoys no protection from § 1140.

## B. Count II (Wrongful Discharge)

The defendants sought dismissal of Bhandari's state law wrongful discharge claim on dual, independent grounds: that the claim is preempted by ERISA; and that it does not plead any state public policy on which to base the wrongful discharge exception to the District of Columbia's employment-at-will doctrine. Bhandari's responses are considered separately, below.

### 1. Preemption

In responding to the defendants' ERISA preemption argument, Bhandari embarks on a theoretical discussion of the limits of the phrase "relate[s] to" as used in 29 U.S.C. § 1144. Opp. at 12-13. But he fails to cite a single case allowing a state wrongful discharge claim under circumstances similar to those presented here.

His efforts to distinguish *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990), also fail. In that case, the discharge was allegedly motivated by the employer's desire to avoid making payments to the employee's pension plan. The Supreme Court held that the state

wrongful discharge claim "'relate[s] to'" an ERISA plan and is therefore preempted, "[b]ecause the existence of a plan is a critical factor in establishing liability, and the trial court's inquiry must be directed to the plan." *Id*. at 133. "[T]here is simply no cause of action if there is no plan." *Id*.

According to Bhandari, the termination in this case was not to avoid benefit payments but instead in retaliation for his complaining about improper charges against an ERISA plan. Yet the statutory provision he relies on – 29 U.S.C. § 1140 – is the very same statute involved in *Ingersoll-Rand*. If, as *Ingersoll-Rand* teaches, a termination to deny benefits relates to, and requires trial court inquiry about, an ERISA plan, then so must a retaliatory termination following complaints about alleged plan overcharges.

Elsewhere in his Memorandum in Opposition, Bhandari complains that the defendants' arguments are inconsistent: on the one hand, the defendants claim that ERISA preempts his state wrongful discharge claim; but on the other hand they claim that ERISA provides no statutory remedy. Opp. at 13-14. There is no inconsistency. Any number of cases show that ERISA can preempt a state claim without providing a federal remedy. *E.g., Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) (common law contract, tort and punitive damage actions for improper processing of insurance claims were preempted, even though ERISA's remedial provisions in private causes of action are limited to recovery of plan benefits and equitable relief).

A number of ERISA preemption cases have arisen in the context of federal removal jurisdiction. In such cases, the courts have drawn a distinction between "complete preemption" and "ordinary preemption," either of which can apply in ERISA litigation. *See, e.g., Felix v. Lucent Technologies*, 387 F.3d at 1156-58. The doctrine of *complete preemption* applies when a plaintiff files an ERISA claim but mislabels it as one involving state law. "ERISA is so 'extraordinary' that it converts a state claim into a federal claim for purposes of removal and the well-pleaded complaint rule." *Id*. at 1156 (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). In that situation, the claim is removable to federal court. In contrast, *ordinary preemption* applies when a plaintiff states an otherwise good, but preempted, state law claim. In that situation the claim is not removable but it is subject to an ERISA preemption defense.

The important point is that just because a claim is not completely preempted does not mean it is free from an ERISA preemption defense. *King I*, 337 F.3d at 425 ("The absence of a federal cause of action says nothing about whether the state claim is preempted in the ordinary sense: it is entirely within the power of Congress to completely eliminate certain remedies by preempting state actions, *while providing no substitute federal action*") (emphasis added).

That is exactly the situation here: Bhandari falls short of stating a good ERISA retaliation claim because he did not "give[] information . . . in any inquiry or proceeding,"

yet any state law remedy he might otherwise have is preempted by ERISA. *Ingersoll-Rand*, 495 U.S. at 133.

**2. No State Public Policy**

Wholly apart from preemption, the wrongful discharge claim is legally insufficient under District of Columbia law.

As shown in the defendants' initial memorandum, the District's public policy exception has invariably been grounded on concerns of state, not federal, policy. Maryland, which recognizes a similar exception, has expressly rejected ERISA as "a sufficiently compelling public policy mandate to support a wrongful discharge action." *King II,* 866 A.2d at 903-4.

Bhandari's description of existing case law is inaccurate. He says that "public policy claims in the District of Columbia have relied *more often* on local, rather than federal, law." Opp. at 13; emphasis added. In fact, the District of Columbia Court of Appeals, which is the ultimate authority on matters of District law, has *uniformly* looked to local law when invoking the public policy exception.

Bhandari also says: "[T]he courts have *unequivocally confirmed* that federal law also may provide the basis of a public policy claim," citing *Liberatore v. Melville Corp.*, 168 F.3d 1326 (D.C. Cir. 1999). Opp. at 13; emphasis added. *Liberatore* confirms nothing of the sort.

In *Liberatore*, a pharmacist was fired when he threatened to complain to the Food and Drug Administration about the improper storage of drugs at the pharmacy where he worked.

In appealing a grant of summary judgment against him, the pharmacist cited both federal *and District of Columbia* law dealing with drug storage standards. *Id*. at 1331. The Circuit Court reversed the grant of summary judgment, quoting the applicable District statute – D.C. Code § 2-2013(a) (1981) (now D.C. Code § 47-2885.13(a) (2001)). Although the Court also cited federal law and regulations, it never discussed whether those provisions, standing alone, could serve as a source of public policy. The *Liberatore* Court's reference to federal law and regulations is readily explained by the fact that District's drug storage statute itself incorporates federal standards: "Drugs which may deteriorate shall at all times be stored under conditions specified on the label of the original container and in accordance with applicable District of Columbia *or federal laws or regulations* . . .." D.C. Code § 2-2013(a) (1981) (emphasis added). *Liberator* therefore does not confirm, unequivocally or otherwise, that federal law provides a public policy source for District of Columbia wrongful discharge claims.

## C. Count III (Breach of Fiduciary Duty)

### 1. Bhandari's Standing

Bhandari's standing to bring a civil enforcement action under ERISA depends on his being a "participant" in the ERISA plan at issue. 29 U.S.C. § 1132(a). The statute defines "participant" as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type." 29 U.S.C. § 1002(7). It is not enough for him simply to claim participant status, because "[t]o say that a 'participant' is any person who claims to be one

begs the question of who is a 'participant' and renders the definition set forth in § 1002(7) superfluous." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989). With respect to former employees such as Bhandari, the term is "naturally read to mean . . . former employees who have a reasonable expectation of returning to covered employment or who have 'a colorable claim to vested benefits." *Id*. (citations, quotation marks and text alteration indicators omitted). *See LaRue v. DeWolff, Boberg & Assoc., Inc*., __ U.S. __, 2008 WL 440748 *5 n.6 (No. 06-856, decided Feb. 20, 2008) ("A plan 'participant' . . . may include a former employee with a colorable claim for benefits").

Bhandari argues (Opp. at 14) that "[a] 'reasonable expectation' of returning to covered employment may be based simply on plaintiff's assertion of a statutory right to reinstatement and/or a request therefor," citing *Felix v. Lucent Technologies, Inc*., 387 F.3d 1146, 1162 (10th Cir. 2004). Yet nowhere in Count III does he allege that he has any expectation, reasonable or otherwise, of returning to the Center; that he has a statutory right to reinstatement; or that he is even requesting reinstatement.[3] These omissions are fatal to his standing.

Equally important, unlike the plaintiffs in *Firestone* and *Lucent Technologies* Bhandari is not suing for ERISA plan benefits or individualized damages. Instead, he

---

[3] In the prayers following Counts I, II and IV of the First Amended Complaint, Bhandari has now inserted "including reinstatement." Assuming those insertions were made in good faith, they have not been repeated, or even incorporated by reference, in Count III. Instead, but for paragraph numbers, Count III in the First Amended Complaint is word-for-word identical to Count 3 in Bhandari's initial pleading.

appears in an essentially derivative capacity on behalf of the plan itself. His Count III prayer for relief seeks "judgment against Defendant Johnson and an award [of] appropriate legal and equitable relief, including, but not limited to, reimbursement *to the plan* of losses resulting from her illegal conduct and an injunction ordering her removal as plan administrator." Amend. Cmplt. at 6-7; emphasis added. Thus Bhandari is not a "former employee . . . who is or may become eligible to receive a benefit of any type." 29 U.S.C. § 1002(7). He is just a former employee.

Bhandari also urges adoption of a "but for" standing test for former employees, citing *Mullins v. Pfizer, Inc.*, 23 F.3d 663 (2nd Cir. 1994), and *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209 (5th Cir. 1992). Those cases involved former employees who had retired in reliance on misleading information provided by their employers and who were suing for the plan benefits they would have enjoyed but for their employers' misstatements. But as shown above, unlike the plaintiffs in *Mullins* and *Christopher* Bhandari is not seeking benefits which he would have received but for alleged wrongful conduct. *Mullins* and *Christopher* are therefore inapplicable here. [4]

**2. Johnson as "Fiduciary"**

Despite the opportunity to do so in his First Amended Complaint, Bhandari rests on the same conclusory allegations contained in his initial pleading to support his contention that Johnson was a plan fiduciary. There, as here, he says only: "At relevant times, Defendant

---

[4] The "but for" test is far from established law, having been rejected by the Fourth, Tenth and Eleventh Circuits. *Lucent Technologies, Inc.*, 387 F.3d at 1159-60, and cases cited therein.

Johnson was a plan administrator with fiduciary responsibilities to participants and beneficiaries." Amend. Cmplt. ¶ 28. The earlier contradiction – that the *Center* administers the plan (Amend. Cmplt. ¶ 7) – also remains. Particularly given his allegations of breach of fiduciary duty and fraudulent conduct, Bhandari "ha[s] not nudged . . . [his] claim[] across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). *See* Fed.R.Civ.P. 9(b) (fraud to be pleaded with particularity).

### D. Count IV (Interference With Business Relationship)

The new allegation that Johnson acted with malice (Amend. Cmplt. ¶¶ 33, 34), does not cure the deficiency in Bhandari's count for tortious interference.

In the District of Columbia, a breach of contract is just that, regardless of the motive behind the breach. An allegation that the breach was motivated by malice adds nothing to the claim and entitles the wronged party to nothing more by way of damages. *E.g., Bernstein v. Fernandez*, 649 A.2d 1064, 1073 (D.C. 1991) ("Punitive damages will not lie for breach of contract, even if it is proven that the breach is willful, wanton, or malicious") (cited with approval in *Oliver v. Mustafa*, 929 A.2d 873, 879 n.3 (D.C. 2007)).

Johnson, as the Center's Executive Director with authority to fire Bhandari, was a party to the employment relationship between the Center and Bhandari. *Press v. Howard Univ.*, 540 A.2d 733, 736 (D.C. 1988). Accepting Bhandari's allegation of malice as true solely for purposes of the motion to dismiss, Johnson's motive in terminating the contract is irrelevant.

*Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285 (D.C. 1989), on which Bhandari relies (Opp. at 16), does not hold to the contrary. In that case, a terminated Garfinckel's employee sued Garfinckel's itself, along with the employee's supervisor and the Garfinckel's vice president who did the firing at the supervisor's urging. As to the two individual defendants, the employee alleged intentional interference with her employment contract. The trial court entered judgment against the supervisor, but it dismissed Garfinckel's on summary judgment and it granted judgment n.o.v. to the vice president. The supervisor appealed and the employee filed a cross-appeal, but only on the summary judgment for Garfinckel's, not on the j.n.o.v. for the vice president. The Court of Appeals' holding therefore could not and did not reach the issue of whether malice on the part of the vice president would have affected his immunity from suit. As the Court of Appeals said:

> [T]he law affords to a *supervisor* . . . a qualified privilege to act properly and justifiably toward a fellow employee and that employee's true employers – those who have the power to hire and fire. We hold . . . that this privilege is vitiated when the *supervisor* acts with malice for the purpose of causing another employee's contract to be terminated. . . . It serves no purpose to immunize *supervisory employees* for their tortious conduct when they are neither parties to the contract between other employees and their common employer, nor empowered by the employer to act as its alter ego with authority to abrogate contractual relationships.

*Id.* at 291; emphasis added.

In arguing that *Sorrells* should be read more broadly, Bhandari misquotes the Court's opinion. He says that "*Press*' grant of immunity from liability does not apply to *corporate officers* who 'procure[] a discharge of the plaintiff for an improper or illegal purpose," citing

*Sorrells* at 291. Opp. at 16 (emphasis added). The actual passage reads: "Prosser points out – and we hold here – that '[t]he [immunity] rule does not protect *one* who procures a discharge of the plaintiff for an improper or illegal purpose." *Sorrells*, 565 A.2d at 291 (emphasis added). The substitution of "corporate officers" for "one" is Bhandari's alone, without justification in the Court's actual holding.

The distinction between a mere supervisor and an officer "empowered by the employer to act as its alter ego with authority to abrogate contractual relationships" was observed in the recent decision of *Langer v. George Washington Univ.*, 498 F.Supp. 2d 196 (D.D.C. 2007). Citing both *Press* and *Sorrells*, Judge Sullivan said that the D.C. Court of Appeals in *Sorrells* "distinguished mere supervisory employees from officers [of Howard University who were involved in the earlier *Press* case]." *Id*. at 202. He went on to say that the law affords a *supervisor* a qualified privilege which "is vitiated, however, when a *supervisor* 'acts with malice for the purpose of causing another employee's contract to be terminated.'" *Id*. (quoting *Sorrells*; emphasis added). By noting the absence of any evidence that the defendant in *Langer* was an officer of George Washington University with the power to bind the University, *id*., Judge Sullivan implies that, had the defendant been an officer, the malice exception to the immunity rule would have been inapplicable.

The other local case cited by Bhandari – *Kassman v. American Univ.*, 546 F.2d 1029 (D.C. Cir. 1976), predates both *Press* and *Sorrells*. Moreover, there is nothing in the opinion

*Sorrells* at 291. Opp. at 16 (emphasis added). The actual passage reads: "Prosser points out – and we hold here – that '[t]he [immunity] rule does not protect *one* who procures a discharge of the plaintiff for an improper or illegal purpose." *Sorrells*, 565 A.2d at 291 (emphasis added). The substitution of "corporate officers" for "one" is Bhandari's alone, without justification in the Court's actual holding.

The distinction between a mere supervisor and an officer "empowered by the employer to act as its alter ego with authority to abrogate contractual relationships" was observed in the recent decision of *Langer v. George Washington Univ.*, 498 F.Supp. 2d 196 (D.D.C. 2007). Citing both *Press* and *Sorrells*, Judge Sullivan said that the D.C. Court of Appeals in *Sorrells* "distinguished mere supervisory employees from officers [of Howard University who were involved in the earlier *Press* case]." *Id*. at 202. He went on to say that the law affords a *supervisor* a qualified privilege which "is vitiated, however, when a *supervisor* 'acts with malice for the purpose of causing another employee's contract to be terminated.'" *Id*. (quoting *Sorrells*; emphasis added). By noting the absence of any evidence that the defendant in *Langer* was an officer of George Washington University with the power to bind the University, *id*., Judge Sullivan implies that, had the defendant been an officer, the malice exception to the immunity rule would have been inapplicable.

The other local case cited by Bhandari – *Kassman v. American Univ.*, 546 F.2d 1029 (D.C. Cir. 1976), predates both *Press* and *Sorrells*. Moreover, there is nothing in the opinion

to indicate that the individual defendant was an officer of the employer with power to hire and fire.

### III. Conclusion

For all the foregoing reasons, and for the reasons set forth in the defendants' initial memorandum, the Court should dismiss the First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state any claim upon which relief can be granted.

Respectfully submitted,

OPPENHEIMER, FLEISCHER & QUIGGLE, P.C.


By   /s/ Charles H. Fleischer
     Charles H. Fleischer, D.C. Bar. No. 4341

7700 Old Georgetown Road, Suite 800
Bethesda, MD  20814
tel: (301) 986-4056 / fax: (301) 951-0555
e-mail: cfleischer@ofqlaw.com

*Attorneys for defendants*