UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| KIRONDEEP BHANDARI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-2232 (ESH) |
| ) | |
| CENTER FOR NONPROFIT ) | |
| ADVANCEMENT, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kirondeep Bhandari has brought suit against his former employer, Center for Nonprofit Advancement ("CNA"), and Betsy Johnson, its Executive Director, for retaliatory discharge and breach of fiduciary duty in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA") and common law claims of wrongful discharge and tortious interference with an advantageous business relationship. Defendants have moved to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, the Court grants defendants' motion with respect to the common law claims, but it denies the motion with respect to the ERISA claims.

## BACKGROUND

CNA is a tax-exempt, nonprofit corporation that serves the nonprofit community through education, advocacy, nonprofit community building and group purchasing. (First Am. Compl. at 2.) Plaintiff was hired in October 2006 as CNA's first Director of Human Resources and Administration. (*Id.*) Plaintiff's responsibilities included managing employee benefit plans and, more generally, ensuring compliance by CNA with federal and state employment laws. (*Id.*)

Plaintiff reported to Johnson, who served as an administrator of an employee benefit plan, the Center for Nonprofit Advancement Benefits Trust ("Health Trust"). (*Id.*) To increase membership, defendants offered nonprofit organizations that joined CNA the opportunity to enroll their employees in an insurance program sponsored by the Health Trust. (*Id.*) CNA administered the Health Trust as a separate legal entity, and CNA could claim reimbursement for the hours that its employees devoted to trust-related work. (*Id.* at 3.)

According to the complaint, in order to increase reimbursements to CNA by the Health Trust, Johnson instructed plaintiff and other employees to inflate the number of hours they spent on trust-related work. (*Id.*) Johnson also falsified her own time sheets to indicate that 80% or more of her time was devoted to the Health Trust when, in fact, she spent only a small percentage of her time on trust issues. (*Id.*) In August 2007, Johnson instructed plaintiff and other CNA employees to take four days off and to falsify their time sheets by recording the missed days as hours devoted to Health Trust-related work. (*Id.*)

In September 2007, plaintiff reported Johnson's misconduct to CNA's outside auditors and sent an email to Derek Harps, the Deputy President and President-elect of CNA's Board of Trustees, in which he complained about Johnson's behavior and noted CNA's "continuing illegal failure to timely pay employee health insurance premiums and employee retirement contributions." (*Id.* at 3-4.) Two business days after plaintiff "blew the whistle" on defendants' illegal practices, Johnson notified plaintiff of her decision to eliminate his job and terminate his employment. (*Id.* at 4.)

On February 6, 2008, plaintiff filed suit, alleging retaliatory discharge in violation of Section 510 of ERISA (Count I); wrongful discharge in violation of public policy (Count II);

breach of fiduciary duty in violation of Section 404(a)(1) of ERISA (Count III); and tortious

interference with an advantageous business relationship (Count IV). Defendants have moved to

dismiss each of these counts.

## ANALYSIS

### I.    Standard of Review

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to

relief that is plausible on its face" and "to raise a right to relief above the speculative level." *Bell*

*Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 1974 (2007). The allegations in plaintiff's

complaint are presumed true at this stage, and all reasonable factual inferences must be construed

in plaintiff's favor. *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375

(D.C. Cir. 1995). However, "the court need not accept inferences drawn by plaintiff if such

inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal

conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d

1271, 1276 (D.C. Cir. 1994).

### II.    Retaliatory Discharge Under ERISA

Defendants argue that plaintiff's allegation in Count I that he was discharged in

retaliation for reporting suspected ERISA violations to Harps and CNA's outside auditors is

insufficient as a matter of law under Section 510 of ERISA. That section provides in pertinent

part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, or
> discriminate against any person *because he has given information or has testified*
> *or is about to testify in any inquiry or proceeding* relating to this chapter . . . .

29 U.S.C. § 1140 (emphasis added).

3

The debate between the parties requires the Court to interpret whether internal complaints are covered by "any inquiry or proceeding relating to" ERISA.  Defendants advocate for adoption of the Fourth Circuit's position that "inquiry or proceeding" is "limited to the legal or administrative, or at least to something more formal than written or oral complaints made to a supervisor."  *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 427 (4th Cir. 2003).  The Court, however, is not persuaded by the court's reasoning in *King* and will therefore follow the majority of circuits that have interpreted Section 510 broadly to cover complaints such as those alleged here.

First, although the D.C. Circuit has yet to address the scope of Section 510, *King* stands alone among the circuits in refusing to extend its protection to internal complaints.  *See, e.g., Nicolaou v. Horizon Media, Inc.*, 402 F.3d 325, 330 (2d Cir. 2005) (internal complaints protected under Section 510); *Anderson v. Elec. Data Sys. Corp.*, 11 F.3d 1311, 1314 (5th Cir. 1994) (same); *Hashimoto v. Bank of Haw.*, 999 F.2d 408, 411 (9th Cir. 1993) (same); *accord Dunn v. Elco Enters., Inc.*, No. 05-71801, 2006 U.S. Dist. LEXIS 26169, at *12-14 (E.D. Mich. May 4, 2006).  As in *Nicolaou*, the issue in this case involves alleged retaliation based on plaintiff's giving of "information . . . in any inquiry or proceeding."  In *Nicolaou*, plaintiff alleged that she had been terminated after alerting outside counsel to alleged ERISA violations and, at his suggestion, meeting with the company's president to discuss those violations.  The Second Circuit held that this meeting was sufficient to constitute an "inquiry" within the meaning of Section 510.  In so holding, the court relied on the respective meanings of the terms "inquiry" and "proceeding," finding that Section 510's inclusion of the former "somewhat less formal term" was "indicative of an intent to ensure protection for those involved in the informal

gathering of information." 402 F.3d at 328-29. The rationale for this more expansive reading of

the term "inquiry" was well put by the Ninth Circuit, which observed that Section 510

> is clearly meant to protect whistle blowers. It may be fairly construed to protect a
> person in [plaintiff's] position if, in fact, she was fired because she was protesting
> a violation of law in connection with an ERISA plan. The normal first step in
> giving information or testifying in any way that might tempt an employer to
> discharge one would be to present the problem first to the responsible managers of
> the ERISA plan. If one is then discharged for raising the problem, the process of
> giving information or testifying is interrupted at its start: the anticipatory
> discharge discourages the whistle blower before the whistle is blown.

*Hashimoto*, 999 F.2d at 411.

Second, *King*'s reasoning is unconvincing because it is based on the inaccurate premise

that ERISA's anti-retaliation provision should be interpreted in the same way as the anti-

retaliation provision contained in the Fair Labor Standards Act ("FLSA").[1]  *Ball v. Memphis Bar-*

*B-Q Co.*, 228 F.3d 360, 363-65 (4th Cir. 2000) (holding that § 215 of FLSA is limited to

complaints in the context of formal legal actions). The flaw in this analysis is easily identified,

for as noted by the Second Circuit, "the plain language of ERISA Section 510 . . . is

unambiguously broader in scope than Section 15(a)(3) of the FLSA." *Nicolaou*, 402 F.3d at 328.

In particular, ERISA applies to "*any inquiry* or proceeding relating to" ERISA, 29 U.S.C. § 1140

(emphasis added), whereas the FLSA extends protection against retaliation to any person who

"has filed any complaint or instituted or caused to be instituted any proceeding under or related

to" the FLSA.  29 U.S.C. § 215(a)(3).  Thus, as recognized by the Second Circuit, "the use of the

---

[1] The FLSA prohibits retaliation against an employee who "has filed any complaint or
instituted or caused to be instituted any proceeding under or related to this chapter, or has
testified or is about to testify in any such proceeding, or has served or is about to serve on an
industry committee."  29 U.S.C. § 215(a)(3).

somewhat less formal term 'inquiry' in ERISA is indicative of an intent to ensure protection for those involved in the informal gathering of information;" and since "[t]he 'informal gathering of information' thus falls within the plain meaning of 'inquiry,'" the Court had no "need [to] go . . . further to conclude that it is protected by Section 510." *Nicolaou*, 402 F.3d at 328-29.[2]

For these reasons, the Court concludes that plaintiff's complaints of alleged ERISA violations to CNA's outside auditors and to a corporate officer are protected by Section 510, and defendant's motion to dismiss Count I is denied.

## II.     Wrongful Discharge

In his second claim, plaintiff alleges that he was wrongfully discharged in violation of public policy.  (First Am. Compl. at 5-6.)  The parties do not dispute that plaintiff was an at-will employee.  "It has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all."  *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991) (citations omitted).  However, the District of Columbia Court of Appeals recognizes a narrow public policy exception to the employment-at-will doctrine.  Pursuant to this exception, "a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation."  *Id.* at 34.  In *Carl v.*

_____

[2] Moreover, it bears noting that the Fourth Circuit's overly narrow reading of the anti-retaliation provision of the FLSA has been expressly rejected by a clear majority of circuit courts (with the sole exception of the Second Circuit).  *See, e.g.*, *Valerio v. Putnam Assocs.*, 173 F.3d 35 (1st Cir. 1999); *Brock v. Richardson*, 812 F.2d 121 (3d Cir. 1987); *EEOC v. Romeo Cmty. Sch.*, 976 F.2d 985 (6th Cir. 1992); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179 (8th Cir. 1975); *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999); *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383 (10th Cir. 1984); *EEOC v. White & Son Enters.*, 881 F.2d 1006 (11th Cir. 1989).  *Contra Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993) (FLSA's § 215 is limited to formal complaints).

*Children's Hospital*, 702 A.2d 159 (D.C. 1997), the D.C. Court of Appeals expanded the public

policy exception to include "circumstances other than an employee's outright refusal to violate a

law . . . if 'solidly based on a statute or regulation that reflects the particular public policy to be

applied.'" *Liberatore v. Melville Corp.*, 168 F.3d 1326, 1331 (D.C. Cir. 1999) (quoting *Carl*, 702

A.2d at 163 (Terry, J., concurring)).  The parties debate whether ERISA provides a public policy

basis for a state wrongful discharge claim.[3]  This dispute, however, need not be resolved, for

plaintiff's claim is barred by the D.C. Court of Appeals' holding in *Nolting v. National Capital

Group, Inc.*, 621 A.2d 1387 (D.C. 1993).  *See also Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251

(D.C. Cir. 2008).

      In *Nolting*, the court held that the public policy exception was inapplicable "where the

very statute creating the relied-upon public policy already contains a specific and significant

remedy for the party aggrieved by its violation."  621 A.2d at 1390.  That decision controls here.

Plaintiff alleges that "he was wrongfully discharged in violation of the public policy set forth in

ERISA."  (Pl.'s Opp'n at 13.)  Yet Section 510 of ERISA creates a right of action for retaliation

against whistle-blowers and makes applicable the statute's "comprehensive civil enforcement

scheme," *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (1990) (quoting *Pilot Life Ins.

Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)), as a remedy for the retaliatory action.  *See* 29 U.S.C. §

1140 (providing that "[t]he provisions of section 1132 of this title [regarding civil enforcement]

shall be applicable in the enforcement of this section").

---

[3] Defendants also argue that plaintiff's claim is preempted by ERISA.  (*See* Defs.' Mot. at 6-7; Defs.' Reply at 4-7.)  Because the Court finds that plaintiff's claim does not fall within the exception to the employment-at-will doctrine, it need not address this argument.

Similarly, the D.C. Circuit in *Kassem* applied *Nolting* and upheld the dismissal of plaintiff's claim that his former employer had terminated him in retaliation for his refusal to participate in a sham investigation that violated Nuclear Regulatory Commission ("NRC") regulations. 513 F.3d at 255. As observed by the Court, the statute at issue "contains its own remedy for retaliation against . . . whistleblowers," so plaintiff could not invoke the narrow public policy exception to the employment-at-will doctrine. *Id.* at 254; *see also Hicks v. Ass'n. of Am. Med. Colls.*, 503 F. Supp. 2d 48, 55 (D.D.C. 2007) (holding, based on *Nolting*, that even if plaintiff's activity had been protected by the FLSA and the District of Columbia Minimum Wage Act, "those statutes [would] provide plaintiff's exclusive remedy and preclude application of wrongful discharge in violation of public policy"). For these same reasons, plaintiff's claim in Count II must be dismissed.

## III.    Breach of Fiduciary Duty Under ERISA

Plaintiff alleges in Count III that Johnson breached her fiduciary responsibilities to plan participants and beneficiaries and violated ERISA's "exclusive benefit" rule, which requires that a plan fiduciary discharge her duties solely for the benefit of plan participants and beneficiaries, by submitting false claims for reimbursement to the Health Trust. (First Am. Compl. at 6.) Defendants contend that this claim fails because plaintiff lacks standing as a participant in the Health Trust and because Johnson is not a fiduciary of the plan. (Defs.' Mot. at 10-14; Defs.' Reply at 8-11.)

### A.    Plaintiff has Standing

Pursuant to Section 502 of ERISA, a plan participant may bring a civil action to enforce the statute's provisions. *See* 29 U.S.C. § 1132. To be a participant, a plaintiff must be either:

(1) an employee in, or reasonably expected to be in, currently covered
employment; (2) a former employee with a reasonable expectation of returning to
covered employment; (3) a former employee with a colorable claim that he will
prevail in a suit for benefits; or (4) a former employee with a colorable claim that
eligibility requirements will be fulfilled in the future.

*Alexander v. Anheuser-Busch Cos.*, 990 F.2d 536, 538-39 (10th Cir. 1993) (citing *Firestone Tire*

*& Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989)); *see also* 29 U.S.C. § 1002(7) (defining

participant in relevant part as "any employee or former employee of an employer . . . who is or

may become eligible to receive a benefit of any type from an employee benefit plan which covers

employees of such employer . . . ").

Defendants contend that plaintiff does not meet the statutory definition of "participant"

because he does not allege in Count III an expectation of returning or right to return to his former

employment at CNA or even request reinstatement, nor does he specifically request benefits.

(Defs.' Reply at 9-10.)  Instead, plaintiff seeks only "judgment against Defendant Johnson and

[an] award [of] appropriate legal and equitable relief, including, but not limited to,

reimbursement to the plan of losses resulting from her illegal conduct and an injunction ordering

her removal as plan administrator.  (First Am. Compl. at 7.) However, as defendants concede,

plaintiff does request reinstatement in the other counts.  Likewise, in Count I, plaintiff seeks,

*inter alia*, restitution of forfeited employee benefits.  These requests indicate that plaintiff does

desire reinstatement with accompanying benefits, thereby satisfying the statutory definition.

Moreover, a number of circuits have recognized a "but for" exception to the standing

requirement; that is, but for an employer's violation of ERISA, the former employee would have

been a plan participant.  *See, e.g., Leuthner v. Blue Cross and Blue Shield of Ne. Pa.*, 454 F.3d

120 (3d Cir. 2006); *Adamson v. Armco, Inc.*, 44 F.3d 650 (8th Cir. 1995); *Swinney v. Gen. Motors*

*Corp.*, 46 F.3d 512 (6th Cir. 1995); *Mullins v. Pfizer, Inc.*, 23 F.3d 663 (2d Cir. 1994); *Vartanian v. Monsanto Co.*, 14 F.3d 697 (1st Cir. 1994); *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209 (5th Cir. 1992). *But see Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1536 (10th Cir. 1993) (rejecting the "but for" exception on the basis that "[t]o say that but for [the employer's] conduct, plaintiffs would have standing is to admit that they lack standing and to allow those who merely *claim* to be participants to be deemed as such"); *Stanton v. Gulf Oil Corp.*, 792 F.2d 432, 435 (4th Cir. 1986) ("The effect of reading in a 'but for' test is to impose participant status on every single employee who *but for* some future contingency may become eligible. Neither caselaw nor other provisions of ERISA supports such a reading of 'participant.'"). In this case, it can be said that "but for [defendants'] conduct alleged to be in violation of ERISA, [plaintiff] *would* be a current employee with a reasonable expectation of receiving benefits, and the employer should not be able through its own malfeasance to defeat the employee's standing." *Christopher*, 950 F.2d at 1221 (emphasis in original). Thus, under either rationale, plaintiff qualifies as a plan participant.

### B.    Whether Johnson is a Fiduciary is a Factual Issue

ERISA imposes personal liability on and subjects to equitable and remedial relief "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . ." 29 U.S.C. § 1109(a). The statute provides that:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary authority or discretionary control respecting management of such
> plan or exercises any authority or control respecting management or disposition of
> its assets, (ii) he renders investment advice for a fee or other compensation, direct
> or indirect, with respect to any moneys or other property of such plan, or has any
> authority or responsibility to do so, or (iii) he has any discretionary authority or
> discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  Defendants contend that plaintiff has failed to allege facts sufficient to support his claim that Johnson is a fiduciary under ERISA.  (See Defs.' Mot. at 13.)

Fiduciary liability does not depend on how an individual's duties are formally characterized in an ERISA plan, but rather upon functional terms of control and authority over the plan.  *CSA 401(k) Plan v. Pension Prof'ls, Inc.*, 195 F.3d 1135, 1138 (9th Cir. 1999).  "A person's actions, not the official designation of his role, determine[] whether he enjoys fiduciary status, regardless of what his agreed-upon contractual responsibilities may be."  *Id.* (internal quotation and citations omitted).  Accordingly, the determination of whether Johnson exercised discretionary authority or control over the Health Trust sufficient to qualify her as a fiduciary of the plan presents an issue of fact, and it cannot be decided at this stage of the litigation.

## IV.    Tortious Interference with an Advantageous Business Relationship

Finally, plaintiff claims that Johnson "intentionally and maliciously interfered" with his employment relationship with CNA.   (First Am. Compl. at 7.)  To state a claim for intentional interference with a business relationship, a plaintiff must establish (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the defendant, (3) intentional interference causing a breach or termination of the relationship or expectancy, and (4) resulting damages.[4]  *Langer v. George Wash. Univ.*, 498 F. Supp. 2d 196,

---

[4] The District of Columbia recognizes the torts of interference with a contractual relationship and interference with prospective advantage.  *See, e.g.*, *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285, 289 (D.C. 1989) (setting forth the elements of intentional interference with contractual relations); *Carr v. Brown*, 395 A.2d 79, 84 (D.C. 1978) (explaining tort of interference with prospective advantage).  Because plaintiff has not alleged the existence of a contract, the Court construes his claim as one for interference with prospective advantage.

201-02 (D.D.C. 2007).  Under District law, plaintiff's status as an at-will employee precludes the existence of a valid business relationship or expectancy, and this claim must therefore be dismissed.

In *McManus v. MCI Communications Corp.*, 748 A.2d 949 (D.C. 2000), plaintiff alleged that she had a valid claim for tortious interference with a contractual relationship because "she had a long-term employment relationship and an expectancy of continuing employment relations with MCI." *Id.* at 957.  In rejecting this claim, the D.C. Court of Appeals stated, "[t]his court never has held that an employee can maintain a suit for interference with prospective advantage where her expectancy was based on an at-will relationship, and we do not do so now." *Id.*; *see also Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 72-73 (D.D.C. 2005) (finding recovery foreclosed for intentional interference with employment relations, either on the basis of existing contract or prospective advantage, where plaintiff was an at-will employee); *Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 24-25 (D.D.C. 2002) (dismissing tortious interference with prospective advantage claim where plaintiff was an at-will employee).[5]  Therefore, under *McManus*, Count IV cannot survive.

---

[5] Given the court's clear ruling in *McManus*, the argument between the parties as to whether *Sorrells, supra*, extends to an officer who allegedly acted with malice is irrelevant.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss [#5] is granted with respect to Counts II and IV and denied with respect to Counts I and III.  An initial scheduling conference is hereby set for April 17, 2008, at 9:45 a.m.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: March 14, 2008

13